**Robert L. WOODS, Appellant,**

v.

**STATE of Missouri, Respondent.**
**No. 22460.**

Missouri Court of Appeals,
Southern District,
Division One.

April 14, 1999.

Motion for Rehearing and Transfer to Supreme Court Denied May 6, 1999.

---

Craig A. Johnston, Asst. Public Defender, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Daniel W. Follett, Asst. Atty. Gen., Jefferson City, for respondent.

CROW, Judge.

The Mississippi County prosecutor charged Appellant with the class B felony of possession of cocaine with intent to distribute it. § 195.211.[1]

On October 10, 1995, Appellant, his lawyer ("Defense Counsel") and the prosecutor appeared in the trial court. Pursuant to a plea agreement, the prosecutor filed an amended information charging Appellant with the class C felony of possession of cocaine. § 195.202. Appellant pled guilty to that charge. The trial court accepted the plea, ordered a presentence investigation, and set sentencing for November 14, 1995.

Appellant, Defense Counsel and the prosecutor reappeared in the trial court November 14, 1995. The trial court sentenced Appellant to seven years' imprisonment, denied probation, and directed that the sentence "run consecutive with any other sentence that [Appellant] may receive from any other court."

On December 10, 1996, Appellant filed a motion for post-conviction relief per Rule 24.035.[2] The parties agree that Appellant's motion was timely.[3]

On May 27, 1998, the motion court entered judgment denying post-conviction relief without an evidentiary hearing. Appellant brings this appeal from that judgment.

Appellant presents two claims of error.

First, Appellant maintains the motion court erred in denying relief without an evidentiary hearing in that Appellant pled facts which, if true, entitle him to relief. Those facts, according to Appellant, are that Defense Counsel "failed to confirm through investigation, prior to [A]ppellant's guilty plea, what the actual plea agreement was, and erroneously advised [A]ppellant that his sentence in this case would run concurrently with some Michigan charges, and thus, the record did not conclusively show that his guilty plea was made voluntarily or intelligently." Continuing, Appellant proclaims: "The record does not refute these allegations, rather it shows that [A]ppellant's mistaken belief was reasonable since, at sentencing, [Defense Counsel] indicated that he understood that the plea agreement contemplated concurrent sentences." Consequently, insists Appellant, his "guilty plea was not intelligently and voluntarily made, and he received ineffective assistance of counsel."

Appellant's second claim of error is that the motion court wrongly denied relief in that Appellant's sentence was unlawful. Specifically, says Appellant, the sentence was unlawful "because a sentence cannot be made to run consecutive to possible sentences for potential convictions."

This court addresses Appellant's claims of error in the order presented.

At the guilty plea proceeding, after the prosecutor recited the facts on which the charge was based, this dialogue ensued:

"THE COURT [4]: Is there a plea bargain?

1. References to statutes are to RSMo 1994.

2. Paragraph "(m)" of the current (1999) version of Rule 24.035 provides that if sentence is pronounced prior to January 1, 1996, post-conviction relief shall be governed by the provisions of Rule 24.035 in effect on the date the motion was filed or December 31, 1995, whichever is earlier. Because Appellant was sentenced November 14, 1995, the version of Rule 24.035 in effect on December 31, 1995, governs this proceeding. References to Rule 24.035 in this opinion are to that version.

3. Rule 24.035(b) required Appellant to file his motion "within ninety days of the date [he] is

delivered to the custody of the department of corrections." The parties agree that Appellant was delivered to the custody of the Missouri Department of Corrections on September 18, 1996. This court gathers from the record and the parties' briefs that the reason for the ten-month delay between sentencing and delivery to the Department of Corrections was that Appellant, after sentencing, was turned over to Michigan authorities and taken there.

4. The judge who presided at the guilty plea proceeding and the sentencing proceeding is not the judge who denied post-conviction relief.

[Prosecutor]: The State is recommending seven years, your Honor.

Q  Do you understand the plea bargain?

A  Yes, sir.

Q  Is that the agreement you have made?

[Prosecutor]: And the State is standing silent.

Q  Seven years with basically Probation making the recommendation. Do you understand that?

A  Yes, sir.

Q  Has anyone made any promises to you concerning what would happen?

A  No, sir.

Q  Do you understand no one knows, because I don't know myself. I know nothing about you or the facts and the circumstances so that is done by Probation and Parole making a recommendation. Do you understand that?

A  Yes, sir.

. . . .

Q  Is there anything you don't understand or any question that you have about anything that has happened since the beginning of this matter until now that you want to discuss with me or your attorney?

A  No."

At the sentencing proceeding, this dialogue occurred:

"THE COURT: ... They are wanting him in Michigan. What are those charges for?

THE DEFENDANT: For probation violation all I know.

THE COURT: All right, Mr. Woods, I will follow the plea bargain that you have entered into. It is the judgment of this Court that you shall be committed to the Division of Corrections for a period of seven years.

Is there any good or just cause or legal reason to be given why sentence should not be pronounced?

[Defense Counsel]: Yes, your Honor, first of all, when we talked about the sentence, as I understood it, when the State said they were going to stand silent, I thought it was an open plea, not an agreement to seven years, which is the maximum for the offense for which he is charged.

THE COURT: What ever is stated to any plea bargain, I always write it right here.

[Defense Counsel]: Perhaps we misunderstood each other, however, I certainly did not agree to seven years, which is the maximum.

[Prosecutor]: All charges were dismissed pursuant to a plea bargain. I said clearly seven years and remain silent.

THE COURT: Gentlemen and ladies, stated to this court there was a plea bargain for seven years. I write those when those are said. There is a record to protect you.

[Defense Counsel]: If you will recall—

THE COURT: I don't recall.

[Defense Counsel]: That same day when [the prosecutor] recommended seven years, I corrected her when she was standing right there and I was standing before you.

THE COURT: The record will reflect, or I would lose my mind instantly. Whenever I ask is there a plea bargain, I write them right there, every file for fifteen years, every file I have ever touched. When I ask him do you understand the plea bargain, I write right there.

[Defense Counsel]: And I agree there was a plea bargain, however it was an open plea, and maybe you would have given seven years any way, however that is not what we agreed to.

THE COURT: Your rights are protected with the record. All right, I am not real sure where I was, basically I had asked if there was any good and just cause or legal reason to be given. Is there any other good and just cause or

legal reason to be given why sentence should not be pronounced?

THE DEFENDANT: I really feel two pieces of cocaine—you have police selling drugs in jail and you sentence me to seven years for two pieces of crack.

THE COURT: Basically I am following a plea bargain.

[Defense Counsel]: That was wrong—

THE DEFENDANT: That the prosecuting attorney would remain silent on everything, and the seven years—like I got caught with a whole bunch of cocaine. If it is like that, man, you ought to send me to seven years—

THE COURT: Allocution and sentence. This sentence to run consecutive with any other sentence that Mr. Woods may receive from any other court.

. . . .

[Defense Counsel]: For the record I would like to make sure that the time he is going to spend in Michigan will reflect the type of time he would have spent here in the State of Missouri.

THE COURT: Has no bearing. This sentence is consecutive to anything.

[Defense Counsel]: It is concurrent, isn't it?

THE COURT: I just pronounced it consecutive a moment ago in reference to the sentence. It is done at the time of sentencing.

[Defense Counsel]: When talking about the agreements with the State, we talked about concurrent time.

[Prosecutor]: I didn't know about the Michigan charge when we made the agreement.

THE COURT: Counsel, the sentence was seven years consecutive with anything else. If I am in error, there are appeal processes available.

[Defense Counsel]: However, we are still on the record. What I am saying to you in Michigan the terms in which time is spent, it is mandated that it is eighty-five percent of the time. If people are going to do seven years here—

THE COURT: Counsel, this sentence is consecutive to anything. Missouri will execute the sentence."

The lawyer appointed to represent Appellant in the motion court filed an amended motion for post-conviction relief. The amended motion alleged, *inter alia*, that Defense Counsel rendered ineffective assistance. Specifically, pled the amended motion:

"Movant asserts that his plea was involuntary because he pled guilty, reasonably relying on the promise that he would serve his Missouri sentence and the Michigan sentence concurrently, as stated by [Defense Counsel]. Further, movant asserts that [Defense Counsel] told him that if he pled guilty he would receive a three [3] year sentence to run concurrent with his Michigan sentence. Movant had been told earlier that he was offered a five [5] year probationary period with a seven [7] year back-up. . . . That on the day of sentencing, movant was told about the seven [7] year sentence by [Defense Counsel]. . . . However, [Defense Counsel] never told movant that he could reject the seven [7] year sentence and insist on going to trial. [Defense Counsel] was ineffective for misadvising movant and failing to investigate what the actual plea agreement was before the day of pleading, and movant was prejudiced in that a reasonable basis existed for movant to rely on his . . . counsel's erroneous advice."

The motion court found the above allegation was refuted by the transcript of the guilty plea proceeding, as the transcript showed, *inter alia*, that Appellant understood the State was "recommending seven years" and Appellant acknowledged that no one had made any promises to him "concerning what would happen." The motion court further found:

"Missouri statute 558.026 RSMo, gives the court the authority to run sentences either concurrently or consecutively. In

this instance the court clearly acted within its statutory authority. A sentence which is within the statutory range offers no basis for vacation."

■ This court's review of the motion court's denial of post-conviction relief is limited to a determination of whether the findings and conclusions of that court are clearly erroneous. Rule 24.035(j); *Wilson v. State,* 813 S.W.2d 833, 835[5] (Mo. banc 1991). Such findings and conclusions are deemed clearly erroneous only if, after reviewing the entire record, this court is left with the definite and firm impression that a mistake has been made. *Id.*

In conjunction with Appellant's plea of guilty, he and Defense Counsel signed and filed a six-page "Petition to Enter a Plea of Guilty" ("the Petition"). It read, in pertinent part:

"8. I know that if I plead GUILTY ... the Court may impose any punishment within the lawful range of punishment.

. . . .

12. If I am on probation or parole in this or any other Court, I know that by pleading GUILTY here my probation or parole may be revoked, and I may be required to serve time in that case which may be consecutive, that is, in addition to any sentence imposed upon me in this case.

13. . . . The Prosecuting Attorney promised that if I plead GUILTY he will do the following: none[.] ...

If anyone else made any promises or suggestions, except as noted in the previous sentences, I know that he had no authority to do it. I know that the sentence I will receive is solely a matter within the control of the Judge. I hope to receive leniency, buy [sic] I am prepared to accept any punishment permitted by law which the Court sees fit to impose.

. . . .

19. No one has told or promised me I would received [sic] probation or pa-role and I understand that I do not have a right to receive probation or parole and whether or not I receive probation or parole is solely in the Court's discretion."

■ Appellant's first point, as this court comprehends it, maintains Appellant pled facts entitling him to an evidentiary hearing on two claims of ineffective assistance of counsel. The first claim, as this court grasps it, is that Defense Counsel failed to confirm what the plea agreement was.

The transcript of the guilty plea proceeding clearly demonstrates the plea agreement was: (1) the prosecutor would reduce the charge against Appellant from the class B felony to the class C felony referred to respectively in the first and second paragraphs of this opinion, (2) the prosecutor would recommend a seven-year sentence, (3) the prosecutor would stand silent on whether Appellant should receive probation. In regard to item "(3)" of the agreement, the trial court explained to Appellant that "Probation and Parole" would make a recommendation.

The transcript of the guilty plea proceeding, together with the Petition, establishes that no promise was made to Appellant that he would receive lesser punishment than seven years' imprisonment, nor was any promise made to him regarding the running of his sentence in the instant case concurrently with any sentence he might receive in another court. Indeed, paragraph 12 of the Petition (quoted earlier in this opinion) confirms that Appellant understood he might be required to serve a sentence in some other case consecutively to the sentence imposed in the instant case.

Furthermore, nothing was said at the guilty plea proceeding regarding any pending charge or unserved sentence in Michigan. Appellant's brief candidly concedes: "The possibility of consecutive sentences was never mentioned during the guilty plea proceeding."

Thus, the record establishes that at the time Appellant pled guilty there was no agreement that his sentence in the instant case would run concurrently with any sentence he might have to serve in Michigan or elsewhere.

It is obvious, of course, that Defense Counsel's remarks at the sentencing proceeding manifested a notion by Defense Counsel that Appellant's sentence in the instant case was to run concurrently with "the time [Appellant] is going to spend in Michigan."

However, as we have seen, the prosecutor replied: "I didn't know about the Michigan charge when we made the agreement." [5]

Additionally, as noted earlier, Defense Counsel signed the Petition. Paragraph 12 of the Petition provided that Appellant might be required to serve a sentence imposed by another court consecutively to his sentence in the instant case.

A prisoner seeking post-conviction relief under Rule 24.035 is not entitled to an evidentiary hearing unless his motion meets three requirements: (1) the motion must allege facts, not conclusions, warranting relief, (2) the facts alleged must not be refuted by the files and records in the case, and (3) the matters complained of must have resulted in prejudice to the prisoner. *Coates v. State*, 939 S.W.2d 912, 914[1] (Mo. banc 1997).

This court holds that regardless of what Defense Counsel said at the sentencing proceeding, the record refutes any claim by Appellant that he (Appellant) failed to understand the plea agreement. Specifically, the record establishes that Appellant knew he could receive any sentence up to seven years' imprisonment, that whether he received probation or parole was up to the trial court, and that he might have to serve a sentence in some other case consecutively to the sentence imposed in the instant case.

The second claim of ineffective assistance in Appellant's first point, as this court divines it, is that Defense Counsel erroneously advised Appellant that his sentence in the instant case "would run concurrently with some Michigan charges."

This court holds Appellant's second claim of ineffective assistance, like his first claim, is refuted by the record.

Irrespective of what Defense Counsel may have told Appellant prior to the guilty plea proceeding, the transcript of the guilty plea proceeding demonstrates there was no agreement about concurrent sentences. Furthermore, paragraphs 12 and 13 of the Petition refute any claim by Appellant that he believed he was entitled to have his sentence in the instant case run concurrently with any sentence he might receive in some other case.

This court therefore holds the motion court's denial of Appellant's claim of ineffective assistance of counsel without an evidentiary hearing was not clearly erroneous. [6] Appellant's first point is without merit.

As reported earlier in this opinion, Appellant's second point avers the motion court clearly erred in rejecting Appellant's contention that his sentence was unlawful. Appellant maintains the sentence was unlawful "because a sentence cannot be made to run consecutive to possible sentences for potential convictions."

---

**5.** Appellant's brief expresses skepticism about the prosecutor's statement. Appellant points out that the prosecutor had reports that Appellant had previous arrests in Michigan for possession and sale of controlled substances and "a very extensive record" there for such offenses. However, nothing in those reports—they are included in the record on appeal—indicates Appellant was on probation or parole in Michigan at the time he pled guilty in the instant case or that any charges were pending against him in Michigan at that time.

**6.** In so holding, this court does not imply the guilty plea proceeding and the sentencing proceeding were paradigms of judicial artistry.

In response to Appellant's second point, the State concedes:

"The motion court clearly erred in denying Appellant an evidentiary hearing on his claim that the trial court improperly sentenced him to consecutive time because Appellant alleged in his Rule 24.035 motion that he had not yet been sentenced in Michigan and that allegation was not refuted by the record. An evidentiary hearing is necessary to determine whether Appellant had, in fact, already been sentenced in Michigan."

Both Appellant and the State cite *Heidebur v. State*, 980 S.W.2d 138 (Mo.App. E.D.1998). There, a trial court attempted to amend a judgment of conviction by adding a proviso that the defendant's sentence be served consecutively to a "federal sentence." *Id.* at 139. However, at the time the trial court undertook the amendment, the defendant had not been convicted or sentenced in the federal case. *Id.* at 140. The appellate court held:

"A sentence may be made consecutive only to existing sentences arising from final judgments, not possible sentences for potential convictions. Sec. 558.026.1; Rule 29.09; *State v. Cooper*, 811 S.W.2d 786, 790 (Mo.App. W.D.1991). Here, the court's attempted amendment purports to make [the defendant's] sentence consecutive to a future federal sentence. Therefore, the sentence as now written is unlawful."

*Heidebur*, 980 S.W.2d at 140[3].

The State's brief, as this court understands it, asserts that if, at the time Appellant was sentenced in the instant case, he was already on probation from an existing Michigan sentence, the trial court in the instant case could run the sentence in the instant case consecutively to the Michigan sentence Appellant would have to serve if his probation there was revoked. However, explains the State: "If ... there was not yet a sentence in Michigan, the trial court could not order the Missouri sentence to run consecutive."

In support of its position, the State cites "§ 568.026.2," RSMo 1994. There is no such statute. This court deduces the State meant to cite § 558.026.2, RSMo Supp. 1995.

This court need not speculate whether the State's hypothesis is sound, as the facts regarding the Michigan case are yet to be determined. On remand, the motion court can ascertain the status of the Michigan case at the time Appellant was sentenced in the instant case and decide whether the sentence in the instant case shall run consecutively to any sentence Appellant must serve—or, by now, has already served—in Michigan.

The portion of the motion court's judgment denying relief from Appellant's seven-year sentence is affirmed. The portion of the motion court's judgment denying relief from the proviso that Appellant's sentence "run consecutive with any other sentence that [Appellant] may receive from any other court" is reversed and this cause is remanded to the motion court for further proceedings consistent with this opinion.

PREWITT, P.J., and PARRISH, J., concur.