**Gordon Dana EVANS, Movant–Appellant,**

v.

**STATE of Missouri, Respondent–Respondent.**

Nos. 22814, 23261.

Missouri Court of Appeals,
Southern District,
Division Two.

Aug. 31, 2000.

Petition for Rehearing and Transfer Denied Sept. 22, 2000.

Application for Transfer Denied Oct. 31, 2000.

Kent Denzel, Asst. Public Defender, Columbia, for appellant.

Jeremiah W. Nixon, Atty. Gen., Susan K. Glass, Asst. Atty. Gen., Jefferson City, for respondent.

JAMES K. PREWITT, Judge.

Appellant appeals from denials of his post-conviction motions filed under Rule 24.035. Those appeals have been consolidated. Appellant's counsel in Appeal No. 23261 describes this case as having "a long and tortured procedural history." No one involved disagrees.

Appellant entered pleas of guilty to murder in the second degree (§ 565.021.1, RSMo 1994) and armed criminal action (§ 571.015, RSMo 1994), before Circuit Judge Anthony Heckemeyer, in the Circuit Court of Scott County on June 22, 1995.[1]

At the plea hearing, Appellant was represented by Anne Kiske, Assistant Public Defender, who was "standing in" for his attorney, Gary Robbins. As part of a preliminary examination by the court, the judge inquired as to any existence of a plea bargain, and Mrs. Kiske and Mrs. Baker–Neel, the prosecuting attorney, both stated that the only agreement was that the sentences run concurrently.

Also contained in the transcript of the plea hearing is the following discussion regarding the "possibility" that, pursuant to § 558.019.3, Appellant would be required to serve eighty-five percent of any sentence imposed:

> MRS. KISKE: Judge, in this case, I would like to have the record reflect that Gordon does understand that he falls under the new sentencing guide lines, that there is a possibility that he will be doing eighty-five percent of whatever sentence you give him.

---

1. Appellant had initially been charged with murder in the first degree and armed criminal action. On June 22, 1995, amended information was filed, reducing the murder charge to murder in the second degree.

THE COURT: Let the record reflect his attorney advises him of that in open court.

Pursuant to a written Petition To Enter Plea of Guilty, the prosecutor agreed to recommend "any sentence given for the murder second to run concurrently with the armed criminal action." Also contained in the Petition was a provision that the prosecutor would "not recommend a sentence in this case."

On July 27, 1995, Appellant appeared for sentencing before Judge Heckemeyer. Before the court was Appellant's pre-sentence investigation, and when asked by the judge whether it contained anything inaccurate, unfair or unreasonable, Appellant responded, "No, sir." The victim's parents were also present at the sentencing hearing and addressed the court and Appellant. Counsel for Appellant proposed a twenty-year sentence, calculating that Appellant would be required to serve at least seventeen years before he would be eligible for release, as opposed to 25.5 years on either a thirty-year or life sentence.

After Appellant expressed his remorse, the prosecutor made her recommendation, stating, "I think that this is exactly the kind of case that you should sentence the defendant to two life sentences." Noting that there did not appear to be "any difference between the two" (30 years or life), the court sentenced Appellant to concurrent life sentences for Count I (second degree murder) and Count II (armed criminal action).

On October 30, 1995, Appellant filed a pro se post-conviction motion challenging the validity of his guilty plea. An amended Rule 24.035 motion was filed by appointed counsel on February 1, 1996, requesting an evidentiary hearing. Therein, Appellant alleged that the state failed to comply with the plea bargain and that his understanding regarding sentencing recommendations and counsel's readiness and advice concerning the plea agreement were deficient.

Appellant was present and testified at the evidentiary hearing held September 3, 1996, before the Honorable David A. Dolan. Kent Denzel of the public defender's office represented Appellant. Appellant stated that originally his understanding of the plea agreement was that sentences would run concurrently; there would be no sentence recommendation; "the charge of [first] degree murder would be dropped to [second] degree, and the armed criminal action would be dismissed." On the day of the plea hearing, the prosecutor refused to dismiss the charge for armed criminal action, and a recess was called.

Appellant testified that the prosecutor claimed she had never agreed to drop the armed criminal action charge, but said if they could find anything in Mr. Robbins' file indicating she had agreed to such a provision, she would uphold it. They could find nothing at that time, although Appellant testified that he found the note later for Mr. Robbins. When the Appellant was returned to the proceeding, certain changes had been made to the original document eliminating any mention of a dismissal of the charge for armed criminal action and replacing the same with a recommendation for a sentence under the murder in the second degree charge to run concurrently with any sentence for armed criminal action.

Appellant further stated that he would not have entered a guilty plea had he known the prosecutor would recommend a sentence, but that he would have proceeded to trial. Other complaints of ineffective assistance of counsel to which Appellant testified included, first, that he was not advised that it was mandatory he serve eighty-five percent of his sentence for second-degree murder before he would be eligible for parole, only that it was a possibility, and, second, that counsel never discussed defending the charges—the only advice he received was to accept a plea bargain.

The Honorable Anthony Heckemeyer testified at the September 3rd hearing re-

garding his first impression upon reading the pre-sentencing report prior to the sentencing hearing. He stated it had been his practice for some fifteen years that after reading the pre-sentence investigation and prior to any proceedings, he would indicate on the front of the report the sentence he would hand down. He further testified that, although he had no independent recollection of Appellant, he had some recollection of counsel's discussion regarding Appellant's sentence, wherein counsel presented to the court his calculations regarding the length of time Appellant would serve for a specific sentence:

> An attorney put a – a time – a – a year factor to a life sentence and no one had ever done that before me. I think Gary Robbins was the attorney. And Gary put – put the argument in a strange way to me and I don't remember – I may – I may state – because I didn't read it, I just glanced. But Gary said if you will give him life instead of the 30 years we calculate – and he gave me a figure – I can't remember exactly what it was now. He said I think it will be a lesser sentence. And I said all right. I have 30 years which I thought was the sentence.[2]

Judge Heckemeyer also stated that he had never enhanced a sentence based on what a prosecutor had argued, but that he may have reduced some sentences "when a prosecutor [was] not as persuasive," or "if a defense attorney [made] a persuasive argument."

When asked whether it would "be inconsistent with the term of an open plea for the State to be allowed to make a recommendation in the case," the judge responded, "Did they make a recommendation or did they respond to my question?" He proceeded to explain: "If you're in my courtroom and I ask you a direct question I suspect you would respond. Now, if the

State made a statement, that's one thing, but my practice is to ask . . ."

The record reveals that the prosecutor's recommendation came after the Appellant had addressed the victim's family and the judge had asked, "Any other matters to be brought before the court before sentencing?"

Judge Dolan's ruling on Appellant's Rule 24.035 motion, entered May 15, 1997, determined that the appropriate relief was for Appellant to receive the plea bargain upon which he relied when he entered his plea, ordered Appellant's sentence to be set aside and remanded the matter for re-sentencing before a different judge. The court found that the prosecutor did not violate its plea bargain as there was no agreement that the prosecutor would not recommend a sentence, but then noted that "movant had a reasonable bases [sic] (although incorrectly) [sic] to believe that his plea of guilty included a plea bargain whereby the prosecutor would make no recommendation as to the length of sentence." The court also held that Appellant's allegations of ineffective assistance of counsel were "not grounds for any relief."

On June 16, 1997, Appellant filed with this court his notice of appeal from the May 15, 1997 order by Judge Dolan. That appeal, *Evans v. State*, 964 S.W.2d 859 (Mo.App.1998), was dismissed because there was no final judgment, as Evans had not yet been re-sentenced.

On June 25, 1998, Appellant, represented by Kent Hall, moved to withdraw his pleas of guilty, pursuant to Rule 29.07(d). The motion was overruled at that time, and counsel for Appellant then filed Appellant's motion for leave to appeal as a poor person and a notice of appeal of the decision overruling Appellant's motion to withdraw his pleas. A new sentencing date was set at that time.

---

**2.** This testimony appears inconsistent with Robbins' comments as contained in the transcript of the July 27, 1995 hearing.

On appeal of the denial of Appellant's motion to withdraw his guilty pleas (*State v. Evans*, 989 S.W.2d 662 (Mo.App.1999)), this court affirmed the trial court's order of June 25, 1998, as more than ninety days had passed between the date Appellant was delivered to the Department of Corrections and the date he filed the motion to withdraw his guilty pleas.

A hearing for re-sentencing was held on June 29, 1998, before Judge Dolan. Appellant was represented by Kent Hall. Appellant was present, as were the parents and brother of the victim, who again addressed the court regarding sentencing. Neither counsel for Appellant nor the prosecutor spoke. The sentences Judge Dolan entered were the same as what Appellant had received before: two concurrent life sentences. In pronouncing sentence, Judge Dolan explained that he would not change the sentences Judge Heckemeyer imposed, but that he was "just going to correct the mistakes that were made." Appellant filed a notice of appeal following that sentencing. It is No. 22814, the first appeal covered by this opinion.

Appellant filed a pro se motion for post-conviction relief on July 20, 1998, alleging ineffective assistance of counsel. Counsel was appointed July 28, 1998, and leave was granted to file an amended Rule 24.035 motion. The post-conviction relief hearing was held on June 16, 1999, before the Honorable W.H. Winchester, III. Appellant testified at the hearing.

Findings, conclusions and the court's order were filed August 31, 1999. The court found that "the only plea bargain agreed to by the prosecutor was the concurrence of the sentences. She did not agree to remain silent as to the length of the sentence." Further, the court concluded that "[t]he appropriate relief is for movant to get the plea bargain that he relied on in

entering his plea. [citation omitted] At the re-sentencing on June 29, 1998, the movant got exactly the agreement he believed he had entered into." Appellant's motion to vacate was denied. From this order, he appeals. It is No. 23261, the second appeal covered by this opinion.

Points I in the appeals are substantially the same. Each allege error in the denial of Appellant's motion to vacate his convictions and sentences in that prosecutor's breach of the plea agreement rendered Appellant's pleas unknowing, unintelligent and involuntary. Appellant further contends that re-sentencing was not the proper remedy, instead the proper remedy would have been to vacate the guilty pleas.[3]

Appellate review of a motion court's denial of post-conviction relief is limited to a determination of whether the findings and conclusions of that court are clearly erroneous. *Woods v. State*, 993 S.W.2d 530, 535 (Mo.App.1999). The determination of whether such findings and conclusions are clearly erroneous is made only after a review of the entire record and when the appellate court is left with a definite and firm impression that a mistake has been made. *Id.*

Under this limited review, the trial court's determination on all of Appellant's contentions except Point I must be affirmed. Appellant's contention that there was no factual basis to support his pleas, that the findings of facts supporting the denial of his original Rule 24.035 motion were inadequate, and that his guilty pleas were not voluntary due to ineffective assistance of counsel are denied based on our conclusion that the trial court's findings of facts were not clearly erroneous and that no error of law appears. As further discussion of them would have no precedential value, in the spirit of Rule

---

3. As "successive motions" are not allowed, Rule 24.035(*l*), *Breeden v. State*, 987 S.W.2d 15, 17 (Mo.App.1999), the appeal from the denial of Appellant's second post-conviction

motion, Appeal No. 23261, must be denied and the trial court directed to enter an order dismissing that motion.

84.16(b)(2) and (5), those contentions are denied. Point I has merit to the extent that an additional re-sentencing is required.

■ Remedies available to the trial court when it has determined that there was a denial or infringement of a defendant's constitutional rights "as to render the judgment subject to collateral attack," include: vacating and setting aside judgment and discharging the movant; re-sentencing the movant; ordering a new trial; or correcting the judgment and sentence as appropriate. *North v. State*, 878 S.W.2d 66, 68 (Mo.App.1994).

■ It is within the discretion of the trial court to determine the appropriate remedy, as it "is in a better position to decide whether the circumstances of this case require only that there be specific performance of the agreement on the plea, in which case petitioner should be resentenced by a different judge, or whether, in the view of the state court, the circumstances require granting the relief sought by petitioner, i.e., the opportunity to withdraw his plea of guilty." *Id.* at 68, quoting *Proctor v. State*, 809 S.W.2d 32, 34 (Mo. App.1991). See also *Santobello v. New York*, 404 U.S. 257, 263, 92 S.Ct. 495, 499 30 L.Ed.2d 427 (1971).

■ A plea agreement is a binding contract between the state and a defendant. *Russell v. State*, 3 S.W.3d 380, 382 (Mo.App.1999). "Rule 24.02 dictates that the terms must be clearly set forth in the record and 'unless a plea agreement impaired the voluntariness or intelligence of a guilty plea, defendant has no constitutional right to have the plea bargain specifically enforced.'" *Id.*, quoting *State v. Price*, 787 S.W.2d 296, 299 (Mo.App.1990). "When a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." *North*, 878 S.W.2d at 67; *Shepard v. State*, 549 S.W.2d 550, 551 (Mo.App.1977).

■ We conclude that the trial court could properly find both that there was no plea agreement that the prosecutor remain silent on the length of sentence, and that Appellant had a reasonable basis to believe there was such an agreement. Appellant's Petition To Enter Plea of Guilty was filed on the date of Appellant's plea hearing. Therein Appellant states he was informed of the charges contained in the Information; that he was counseled and advised regarding the nature of the charges, the range of punishment, and possible defenses relating thereto; that he had not been coerced or threatened; that he was satisfied with counsel's assistance and advice; and that he had not been promised "a particular sentence, or probation, or any other form of leniency." Further, the Petition contains the language by which Appellant contends the prosecutor was bound:

> The prosecuting attorney promised that if I plead GUILTY she will do the following: She has reduced the charge of murder in the first degree to murder in the second degree; she will recommend [sic] any sentence given for the murder second to run concurrently with the armed criminal action. She will not recommend a sentence in this case, but will agree that any sentence imposed against me as a result of my plea of guilty to CR593–215FX will run concurrently with the sentence imposed [on] me in the above-referenced case, and concurrently with each other.

The docket sheet indicates that the Petition was "signed by the defendant and attorney and approved by the Court." But, it was not signed by the prosecuting attorney.

Furthermore, the transcripts provided with the record do not support Appellant's contention that the prosecutor would stand silent as to sentencing recommendations. The following exchange occurred during the plea hearing:

Q. [By the court] Is there a plea bargain?

MRS. BAKER–NEEL [prosecuting attorney]: Just a charge bargain, Your Honor, and the fact that the sentences would be recurrent [sic].

Q. Do you understand that there is no plea bargain in this case other than concurrency?

A. [Defendant] Yes, sir.

Q. Has anyone made any promise to you concerning what would happen?

A. [Defendant] Well –

MRS. KISKE: Judge, his understanding is that that the charges are second degree murder, that he is pleading open to second degree murder, that the charges of second degree murder, the ACA charge and possession of controlled substance charge will all be run currently [sic].

. . . .

Q. There are no plea bargains, other than all of them will run concurrently?

A. Yes, sir.

In the transcript of the sentencing hearing, Appellant's plea bargain is briefly discussed:

THE COURT: The plea bargain is there will be a concurrence in the charges?

MRS. BAKER–NEEL: That is the extent of the plea bargain.

No objections were made by either counsel present at either instance. Also, there was no testimony offered in the evidentiary hearing from any of Appellant's four or five former attorneys in support of his contention. But, there was reference made by Appellant's attorney in the transcript of the hearing on Appellant's motion to withdraw the guilty plea to a letter, Defendant's Exhibit A, from Gary Robbins (attorney for Appellant in plea negotiations), "referencing a plea agreement or aspects of the plea agreement."

Neither Exhibit A nor Appellant's motion to withdraw his guilty plea were con-

tained in the legal files. The transcript does indicate that Attorney Hall addressed both issues relating to the prosecutor's refusal to dismiss the armed criminal action charge and stand silent during the sentencing hearing. The prosecutor responded, saying: "This plea offer was withdrawn when [Appellant] sat on it for two months. If you will read in the transcript it states that the extent of the plea bargain were [sic] the sentences were to be concurrent period." The judge found "that the letter that was attached is an exhibit of the plea negotiations, and that the ultimate plea agreement was the agreement that was entered into on that date."

■ Had there been the plea agreement as contended by Appellant, then we may have been inclined to agree that the motion court should have vacated the convictions and sentences, as the agreement was not complied with initially. Even when there is a breach of a plea bargain agreement, there is discretion as to whether to vacate only the sentences and, as in this instance, have re-sentencing before a judge not presented with the improper remarks of a prosecutor. *Proctor v. State*, 809 S.W.2d 32, 35 (Mo.App.1991).

Here, we find no error in the trial court concluding that Appellant should receive the plea bargain he thought he had, that is, a sentencing before a new judge where the prosecutor makes no comment or recommendation as to sentence. However, we also conclude that Appellant did not receive sentencing from a judge who made an independent decision as to the sentence. Prior to assessing the re-sentence, the trial judge stated:

Mr. Evans, I don't know of any judge who probably pondered over your sentence any harder than Judge Heckemeyer. He takes these cases very seriously, and I am sure that there were many hours that he spent deciding what to do in reading your letters that you wrote, which are all in this file, letters from family members, letters from pastors,

letters from cousins, persons who knew you a long time ago, and I don't think that he took very lightly anything that he did, so I am not going to change his sentence. I am just going to correct the mistakes that were made.

Appellant has argued that it "was not possible for sentencing before another judge in the same circuit to be truly independent." Whether that is correct, we do not decide. However, to eliminate any problem in that regard, we direct the presiding judge of the Thirty-third Judicial Circuit to request the Supreme Court to assign a judge for re-sentencing from outside that circuit. *See* Mo. Const., art. V, § 6.

We determine that the trial court did not err in its ultimate finding that there was no plea agreement and we concur that because Appellant had a reasonable basis for believing that there was an agreement, he should be given the benefit of the agreement he thought he had. Therefore, if the prosecuting attorney does not agree to remain silent as to the length of sentence, then the trial court must vacate the convictions and sentences. However, if the prosecuting attorney does remain silent, then the court should vacate only the sentences and re-sentence Appellant consistent with this opinion.

Appellant's sentences are vacated and the cause remanded for further proceedings in accordance with this opinion. The appeal from Appellant's second post-conviction motion, Appeal No. 23261, is denied and the causes remanded to the trial court to enter judgment dismissing that motion.

CROW, J., and GARRISON, J., concur.