

# Missouri Court of Appeals
## Southern District

### In Division

CORNELL ANTHONY CORNELIUS,   )
                    )
      Movant-Appellant,   )
                    )
     v.              )      No. SD36988
                    )
STATE OF MISSOURI,      )      **Filed: August 22, 2022**
                    )
      Respondent-Respondent.   )

### APPEAL FROM THE CIRCUIT COURT OF ST. CLAIR COUNTY

The Honorable Jerry J. Rellihan, Judge

### <u>AFFIRMED</u>

Cornell Anthony Cornelius ("Movant") timely appeals from the motion court's denial, after an evidentiary hearing, of his amended motion for post-conviction relief pursuant to Rule 24.035.[1] Movant raises two points relied on – that (1) the State breached its plea agreement with Movant because the plea agreement permitted the State to argue for a sentence of up to 30 years in prison and permitted Movant to argue for "something less" rather than a minimum sentence of twenty years in prison, and (2)

---

[1] Missouri Court Rules (2013). Rule 29.15(m), Missouri Court Rules (2022) (Movant's sentence was pronounced on December 6, 2012, and Movant's *pro se* motion was filed on June 3, 2013). All references to rules are to Missouri Court Rules (2013), unless indicated otherwise.

1

sentencing counsel was constitutionally ineffective in not objecting to the prosecutor's claimed erroneous recitation of the plea agreement, adding the 20-year-minimum, at sentencing. We reject both of Movant's points and affirm the motion court's judgment.

**Facts and Procedural Background**

*Procedural Background*

Following a change of venue from Henry County to St. Clair County, Movant, on September 6, 2012, entered a plea of guilty pursuant to an oral plea agreement to murder in the second degree,[2] and two other Henry County offenses charged in separate cases. Movant was subsequently sentenced for those offenses on December 6, 2012, to 28 years in prison for murder in the second degree and concurrent terms of seven and three years in prison for the other two offenses. Movant was represented by Patrick James O'Connor ("P.J.") at the plea hearing, and by P.J.'s father, John Patrick O'Connor ("John"), at sentencing. Associate Circuit Judge Michael C. Dawson presided at Movant's plea hearing and imposed Movant's sentence.

On June 3, 2013, Movant filed a *pro se* motion for post-conviction relief pursuant to Rule 24.035, and, for the first time, claimed that the State breached its plea agreement with Movant because the plea agreement announced at the plea hearing permitted the State to argue for a maximum sentence of 30 years in prison and permitted Movant to argue for "something less" but, at sentencing, the State announced that under the plea agreement "the minimum would be a 20-year-sentence on the murder case." This claim was carried forward into an amended motion for post-conviction relief that added a claim

---

[2] "[P]ursuant to a[n overall plea] agreement," the charge was reduced from murder in the first degree.

2

that sentencing counsel was constitutionally ineffective in not objecting to the prosecutor's claimed erroneous recitation of the plea agreement at sentencing.[3]  Movant's post-conviction relief proceeding was assigned to Associate Circuit Judge Jerry J. Rellihan on December 31, 2014.

The motion court conducted an evidentiary hearing on November 5, 2020, and entered its judgment denying Movant's amended motion on January 5, 2021.

*Plea Hearing on September 6, 2012*

During Movant's plea colloquy, the following exchange occurred:

THE COURT:  [Prosecutor[4]], if this Defendant pleads guilty to . . . these charges, the State is going to recommend what, if anything, sir?

[Prosecutor]:   Your Honor, the agreement that the parties have entered into is that the State amend the case containing the first-degree murder charge to one of murder in the second degree which, as you know, has already been done, and that the Court would order a sentencing assessment report and that at sentencing, there would be – There's an agreement that the maximum that the Court could sentence the Defendant to would be 30 years, that the State could argue for up to 30 years and the *Defendant could argue for something less*.  [(Emphasis added).]  That's in – in the murder case.

---

[3] We have independently verified the timeliness of Movant's post-conviction motions.  *See* **Moore v. State**, 458 S.W.3d 822, 825-26 (Mo. banc 2015); **Dorris v. State**, 360 S.W.3d 260, 268 (Mo. banc 2012).  Movant's *pro se* motion was filed on June 3, 2013, within 180 days of his sentencing on December 6, 2012, and subsequent delivery to the Department of Corrections.  The motion court initially appointed counsel on June 3, 2013, and a transcript of Movant's plea and sentencing were filed on September 12, 2013, but appointed counsel took no substantive action in Movant's post-conviction relief proceeding for more than three-and-one-half years.  On August 14, 2017, the motion court granted a motion for abandonment, reappointed counsel, and granted counsel ninety days to file an amended motion – making that motion due on Monday, November 13, 2017 (the ninetieth day after August 14, 2017, was Sunday, November 12, 2017).  Reappointed counsel filed Movant's amended motion on Monday, November 13, 2017.

[4] The prosecutor was Richard M. Shields, the Prosecuting Attorney for Henry County.

3

And then in the other . . . cases, he would plead guilty to those and would receive some sentence equal to or less than that in the murder case which would run concurrent with the murder case.

THE COURT:  [Defense counsel P.J.], is that the agreement that you believe you and your client have struck?

[Defense counsel P.J.]:  Yes, Your Honor.

THE COURT:  Mr. Cornelius, did you hear what they just said?

THE DEFENDANT:  Yes, Your honor.

THE COURT:  Did the Prosecutor say anything that you didn't understand?

THE DEFENDANT:  No, Your Honor.

THE COURT:  All right.  Is this the agreement that your attorney and you discussed?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Do you want to enter pleas of guilty to these three cases in exchange for . . . that agreement?

THE DEFENDANT:  Yes, Your Honor.

. . . .

[THE COURT:]  Is this – Are you pleading guilty here today pursuant to an agreement with the State of Missouri?

[THE DEFENDANT:]  Yes, Your Honor.

[THE COURT:]  You heard the State announce what they believe the terms of the agreement was [sic]?

[THE DEFENDANT:]  Yes, Your Honor.

[THE COURT:]  You heard your attorney tell me that that was his understanding of the terms of the agreement?  Did you hear that?

[THE DEFENDANT:]  Yes, Your Honor.

[THE COURT:]  Do you – Is it what you understood it to be?

4

[THE DEFENDANT:]  Yes.  Yes, Your Honor.

. . . .

[THE COURT:]  Okay.  Now, do you understand – Understand one thing, right now.  You tell me you want to back up and not do this, and we'll have a trial.

[THE DEFENDANT:]  Yes, Your Honor.

[THE COURT:]  I'll let you back out.  Do you want to back out?

[THE DEFENDANT:]  No, Your Honor.

[THE COURT:]  Is this the deal you want?

[THE DEFENDANT:]  Yes, Your Honor.

[THE COURT:]  You understand that if I accept your plea of guilty on this Class A felony, you could be sentenced up to 30 years?

[THE DEFENDANT:]  Yes, Your Honor.

[THE COURT:]  There's nothing going to keep the State from asking me to do that.  Do you understand?

[THE DEFENDANT:]  Yes, Your Honor.

[THE COURT:]  And we will do a sentence assessment report.  Has your attorney explained to you what that is?

[THE DEFENDANT:]  Yes, Your Honor.

[THE COURT:]  And then your attorney will be allowed . . . to make arguments on your behalf for some alternate sentence.  Do you understand that?

[THE DEFENDANT:]  Yes, Your Honor.

Toward the beginning of the sentencing hearing, the trial court asked the prosecutor[5] for his recommendation on sentencing so that the victim's mother and sister, who were expected to testify, would be able to respond to that recommendation. In response, the prosecutor informed the trial court:

> Well, I can state for the record, Judge, and . . . it was stated at the time of . . . the plea that the State had agreed as part of an overall plea agreement in this case to amend what was originally charged as first[-]degree murder to second[-]degree murder and that the Defendant would plead guilty to that amended charge, that there . . . was an agreement that the maximum penalty that could be imposed would be a 30-year sentence and that the minimum would be a 20-year sentence on the murder case, and it was further agreed that the Defendant would be sentenced to a term of years on the other two charges that would just run concurrent with the murder charge, and that has been communicated to the victim's family and – for quite some time and the State does intend to, not surprisingly, argue for the top end of that range. I mean it's no secret to the defense that the State is going to be arguing, in fact urging, that the Court sentence the Defendant to 30 years.

After testimony of witnesses called by both the State and Movant and Movant's own testimony, the prosecutor began his argument for an appropriate sentence stating: "Well, I . . . indicated before, Judge, that there was that agreement that it would be between 20 and 30 and that I would be arguing for 30[.] . . . I would ask the Court to impose the top end of the range of this agreement of 30 years." In response, defense counsel John stated, in part:

> And in looking at his overall record, this Defendant, as it was laid out in the presentence report, it says that the average prison sentence is 21.9 years. . . .
> So I would ask the Court to . . . take that into consideration. I would – Obviously, I've spoken about the fact his age. He's . . . 22-years old, he's a young man and that no matter what sentence the Court gives, it's going to be 85 percent. So if it's 20 years, he's going to serve 17. If it's 25 years,

---

[5] Again, the prosecutor was Mr. Richard M. Shields, the Prosecuting Attorney for Henry County.

he's going to serve about 21. If it's 30 years, he's going to serve 24. And we know that -- 25. We know as we sit here, that is what is going to happen.

And so, I . . . think there is good in him. I think that there is a chance for rehabilitation. And with his age we know at some point, no matter if the Court decides the maximum or decides something in between, that he's going to be back in society . . . .

The trial court then imposed sentence ordering that Movant be imprisoned for 28 years for murder in the second degree, and ordering concurrent terms of imprisonment of seven and three years for Movant's other two Henry County offenses.

Subsequently, during the trial court's inquiry into the assistance provided Movant by his counsel, the O'Connors, Movant stated he "had a sufficient opportunity to discuss [his] case" with P.J. but not with John, and that P.J. had done "everything in the case up until today." Movant then stated he was "not satisfied" with P.J.'s assistance "[b]ecause I'm here now pleading guilty and being sentenced for something I didn't do," and that he was "not truthful with the Court" when he told the trial court at his plea hearing that he shot the victim. After speaking privately with John, Movant continued to assert that he had not shot the victim; that his cousin had shot the victim; that he had told his "attorney" these facts; and added that "I pled to this because I didn't want to face life in prison," and "I didn't feel like going to trial and if I . . . won't win, I didn't want to face the rest of my life in prison. So I took this. He said this was a good plea deal to take. So I took it."

Following a recess during which counsel met with the trial court in chambers, Movant, in response to questions from John, testified he was "basically upset because [he] got 28 years" and "[n]ot because of something [John] did or didn't do." Movant also testified he told the trial court "the truth when [he] pled guilty." In response to the trial court's questions, Movant also stated that other than his sentence of 28 years, he was "not

7

unhappy with" John, and did not believe John or P.J. "did anything to hurt [Movant] in this case."

*Evidentiary Hearing in Post-Conviction Relief Proceeding on November 5, 2020*

John appeared via Zoom at the hearing on Movant's amended post-conviction motion, and testified in part as follows. John handled Movant's criminal case with his son, P.J. John was "lead counsel" and "handled all" the "plea discussions" with Mr. Shields. P.J. "did some of the investigative work," and "went to handle the plea."

John did not have a "specific recollection" that the plea agreement limited Movant's ability to argue for a sentence less than 30 years to a minimum sentence of 20 years (in John's words "a cap of 20"[6]), but believed that was the plea agreement because: (1) Movant "was facing first[-]degree murder, life without parole. We were trying to get to a sentence that gave the defendant a possibility of a sentence that would not leave him in prison for the rest of his life. So the fact that a plea offer would be a max of 30 and a bottom of 20, I've had over a dozen cases like that, that that was the plea offer"; (2) in John's argument at sentencing, he "clearly" was "not arguing for something below 20 years," and he "would have argued for 10 years" if the plea agreement had permitted him to do so; (3) at sentencing, Movant "never said to me, 'My god, I thought you could argue for 10.' He never said that to me. You can see he spoke up very clearly for himself. If he believed then that that was the deal, I believe that he would have been grabbing my arm. But more importantly, before the actual sentencing, I would have told his family and him exactly the sentence I was going to be arguing for, which was around 20 years, because I knew 21 was probably our best bet"; and (4) John would have

---

[6] Motion counsel referred to the limitation as "a basement on a sentence" or a "floor."

8

objected if the prosecuting attorney had misstated the plea agreement, and John's memory of the plea agreement would have been much better in December 2012 than at the post-conviction evidentiary hearing in November 2020.

P.J. also appeared by Zoom and testified that he did not have "reason to believe there's anything different [about the plea agreement] than what was said" at the plea hearing, and that he would correct any misstatement of a plea agreement by a prosecutor. P.J. did not have any "independent recollection" whether or not "something less" "was 20 or what it was," but acknowledged 20 is less than 30. P.J.'s notes "only reflected . . . a lid of 30."

Movant also testified via Polycom, and informed the motion court as follows. "It was my understanding . . . from my trial counsel, P.J. O'Connor, that I signed a plea that was 10 to 30. I mean, and had it been made known by accepting this plea that the State offered, I would not have accepted that plea. I would have insisted on going to trial." Stating "that I could argue for something less, and then saying that the minimum was actually 20 and not informing me of that was ambiguous and vague, which has the potential of confusing an individual. I was . . . a victim of confusion." Movant "agreed to plead guilty to 10 to 30." On cross examination, Movant also asserted he told John at sentencing "'Hey, I thought . . . I could . . . receive a minimum of 10.' And he . . . stood silent instead of objecting." Movant acknowledged that his statement was not included in the transcript, and stated "we was at a table."

9

*Judgment in Post-Conviction Relief Proceeding*

The motion court issued its Findings of Fact and Conclusions of Law and Judgment ("Judgment")[7] on January 5, 2021. In its Judgment, the motion court denied Movant's claims, and found John and P.J. O'Connor "highly credible" and Movant "wholly without credibility." Ultimately, the motion court found that Movant failed to meet his burden of proof on either of his claims.

**Analysis**

*Point I – Movant Failed to Meet His Burden to Prove the State Breached the Plea Agreement*

In his first point relied on, Movant asserts that the motion court "clearly erred" "when it denied [Movant's] claim that the prosecutor breached the plea agreement[] because a breach occurs when the prosecutor changes the terms of the plea agreement," and "prejudice automatically results from a breach."

Standard of Review

> Appellate review of a judgment on a Rule 24.035 motion is "limited to a determination of whether the findings and conclusions of the trial court are clearly erroneous." Rule 24.035(k). The judgment is "clearly erroneous" when, upon review of the complete record, there is a "definite and firm impression that a mistake has been made." *Johnson v. State*, 580 S.W.3d 895, 900 (Mo. banc 2019).

***Hefley v. State***, 626 S.W.3d 244, 248 (Mo. banc 2021). Under Rule 24.035(i), Movant "has the burden of proving [his] claims for relief by a preponderance of the evidence" before the motion court. Movant also has the burden to show by a preponderance of the evidence that the motion court clearly erred in its ruling. ***Cooper v. State***, 356 S.W.3d

---

[7] Under Rule 24.035(k), the document sustaining or overruling a post-conviction relief motion need not meet the denomination or signature requirements of Rule 74.01(a).

148, 152 (Mo. banc 2011); **Hudson v. State**, 626 S.W.3d 884, 887 (Mo. App. W.D. 2021). "Determinations concerning credibility are exclusively for the motion court. The motion court is free to believe or disbelieve any evidence, whether contradicted or undisputed, and we defer to the credibility determinations of the motion court." **Stacker v. State**, 357 S.W.3d 300, 303 (Mo. App. S.D. 2012); *see also* **Jones v. State**, 635 S.W.3d 875, 877 (Mo. App. S.D. 2021) (similar statement of the rule on matters of credibility).

Applicable Legal Principles

Rule 24.02(d)2, Missouri Court Rules (2012), provided:

> *Disclosure of Plea Agreement—Court's Action Thereon.* If a plea agreement has been reached by the parties, the court shall require the disclosure of the agreement on the record in open court or, on a showing of good cause, in camera, at the time the plea is offered. If the agreement is pursuant to Rule 24.02(d)1(B), the court shall advise the defendant that the plea cannot be withdrawn if the court does not adopt the recommendation or request. Thereupon the court may accept or reject the agreement or may defer its decision as to the acceptance or rejection until there has been an opportunity to consider the presentence report.

In addition, "[a] plea agreement is a binding contract between the state and a defendant." **Evans v. State**, 28 S.W.3d 434, 439 (Mo. App. S.D. 2000) (internal citation omitted). Further:

> Plea agreements should be the product of fair negotiations and should meet reasonable expectations of both the prosecution and the defendant. *See Schellert v. State*, 569 S.W.2d 735, 739 (Mo. banc 1978). " '[W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled.' " *Id*. at 738 (quoting *Santobello v. New York*, 404 U.S. 257, 262, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971)). If the prosecutor fails to fulfill a promise that induced a post-conviction movant's guilty plea, the movant is entitled to relief. *North v. State*, 878 S.W.2d 66, 67 (Mo.App.1994).[8]

---

[8] Criminal defendants often frame a different but somewhat similar claim as the defendant having a reasonable, but mistaken, belief as to the terms of the plea agreement based on positive

*Roberts v. State*, 276 S.W.3d 833, 836 (Mo. banc 2009).

The oral plea agreement disclosed on the record in open court at the time of Movant's plea in accordance with Rule 24.02(d)2 was "the State could argue for up to 30 years and the Defendant could argue for something less." In light of the fact the plea agreement was a contract between the State and Movant, the motion court, in interpreting the plea agreement, should:

> ascertain the intent of the parties by looking at the words of the contract and giving those words their plain, ordinary, and usual meaning. The "intent of the parties . . . is determined based on the contract alone unless the contract is ambiguous."
> "[A] contract is only ambiguous, and in need of a court's interpretation, if its terms are susceptible to honest and fair differences." "A contract is not ambiguous merely because the parties disagree as to its construction." "An ambiguity exists when there is duplicity, indistinctness, or uncertainty in the meaning of the language in the policy. Language is ambiguous if it is reasonably open to different constructions."

---

misrepresentations on which the defendant was entitled to rely. *See*, *e.g.*, *Vanzandt v. State*, 212 S.W.3d 228, 232, 232-33 (Mo. App. S.D. 2007) (movant failed to prove a reasonable, but mistaken, belief that was induced by a positive misrepresentation); and *Evans v. State*, 28 S.W.3d 434, 439, 440, 439-41 (Mo. App. S.D. 2000) (concluding "the trial court could properly find . . . that there was no plea agreement that the prosecutor remain silent on the length of sentence," but ultimately permitting the defendant to "receive the plea bargain he [reasonably] thought he had" based on a Petition to Enter Plea of Guilty that was signed by the defendant and defense counsel and approved by the trial court, but was not signed by the prosecuting attorney). In this case, Movant does not claim that he had a reasonable, but mistaken, belief that he was entitled to seek a minimum sentence of 10 rather than 20 years – a claim that likely would be precluded by the motion court's determination Movant was "wholly without credibility." Instead, Movant claims the phrase in the oral plea agreement "the Defendant could argue for something less" meant Movant could seek a minimum sentence of 10 years, and the prosecutor's limitation of that phrase at sentencing to a minimum sentence of 20 years was a breach of the plea agreement.

***Ethridge v. TierOne Bank***, 226 S.W.3d 127, 131 (Mo. banc 2007) (internal citations omitted); *see also **Hughes v. Hughes***, 23 S.W.3d 838, 840, 839-41 (Mo. App. W.D. 2000) (applying the "normal rules of contract construction" to an oral separation agreement "incorporated" into a dissolution decree, and utilizing extrinsic evidence to interpret the ambiguous term "employment" as used in the oral separation agreement and incorporated into the decree) (internal citation and quotations omitted); and ***In re Marriage of Thompson***, 27 S.W.3d 502, 506, 505-06 (Mo. App. S.D. 2000) (applying the "normal rules of contract construction" to an oral property settlement agreement that was "spread . . . upon the record" and which the trial court "attempted to memorialize" in its judgment) (internal citation and quotations omitted).  "Whether a contract is ambiguous is a question of law we review *de novo*."  ***Dunn v. Baker***, 533 S.W.3d 831, 835 (Mo. App. E.D. 2017).  "Once an ambiguity is determined to exist, the parties' intent can be ascertained through the use of extrinsic evidence.  Resolution of an ambiguity through the use of extrinsic evidence is a question of fact."  ***Central Stone Co. v. Warning***, 412 S.W.3d 908, 912 (Mo. App. E.D. 2013) (internal citation omitted).

<u>Discussion</u>

At the time of Movant's plea, the prosecutor stated on the record:

> [T]he agreement that the parties have entered into is that the State amend the case containing the first-degree murder charge to one of murder in the second degree which, as you know, has already been done, and that the Court would order a sentencing assessment report and that at sentencing, there would be – There's an agreement that the maximum that the Court could sentence the Defendant to would be 30 years, that the State could argue for up to 30 years and the *Defendant could argue for something less*. [(Emphasis added).]  That's in – in the murder case.
> And then in the other . . . cases, he would plead guilty to those and would receive some sentence equal to or less than that in the murder case which would run concurrent with the murder case.

Both plea counsel (i.e., P.J.) and Movant affirmatively agreed that the agreement as stated by the prosecutor was the agreement reached by the parties.

Movant argues that "the terms of the plea agreement . . . are unambiguous," and, because the plea agreement is a contract, extrinsic evidence of the parties' intent as to the meaning of a term or terms cannot be considered in interpreting the plea agreement. We disagree and conclude that the word "something" in the phrase "something less" is, in fact, ambiguous.[9] In the context of the plea agreement and the phrase "something less," "something" is uncertain and reasonably open to different constructions. For example, "something" less could reasonably be construed to mean a reduction of imprisonment from 30 years to (1) between 20 and 30 (as the prosecutor and defense attorney who negotiated the plea agreement believed), (2) between 10 and 30 (as Movant claims he believed), (3) between zero and 30, or (4) a smaller reduction. As a result, the motion court was entitled to consider extrinsic evidence of the parties' intent (e.g., the prosecutor's description of the plea agreement at sentencing; Movant's failure at sentencing to comment on, or object to, the alleged discrepancy in the meaning of "something less"; Movant's affirmative statement toward the end of the sentencing hearing that "I didn't want to face the rest of my life in prison. So I took this. He said this was a good plea deal to take. So I took it"; and John's testimony at the post-conviction relief evidentiary hearing that (1) he was lead counsel and "handled all" the "plea discussions," (2) he believed Movant's argument at sentencing was limited to a floor of 20 years, (3) that was the plea offer in "over a dozen" similar cases he had, (4) he

_____

[9] Movant appears to agree based on his testimony at the post-conviction evidentiary hearing indicating that "something less" "was ambiguous and vague."

14

"knew 21 [years] was probably our best bet," (5) he did not argue for "something below 20 years" at sentencing and he would have done so if the plea agreement permitted that argument, and (6) before sentencing, he would have told Movant and Movant's family "exactly the sentence" he was "going to be arguing for," and Movant never told John Movant thought John could argue for less) in concluding that Movant failed to meet his burden to prove that "something less" meant less than a minimum of 20 years. The motion court's conclusion was not clearly erroneous, and Movant's first point is denied.

*Point II – In Light of Movant's Failure to Prove "Something Less" Meant a Larger Reduction Than from Thirty to Twenty Years, the Motion Court's Conclusion that Movant Failed to Prove Sentencing Counsel Was Ineffective Was Not Clearly Erroneous*

In his second point, Movant claims sentencing counsel was constitutionally ineffective in not objecting to the prosecutor's claimed erroneous recitation of the plea agreement at sentencing. In light of our denial of Movant's first point, an objection to the prosecutor's recitation of Movant's plea agreement with the State at sentencing would not have been meritorious because Movant failed to meet his burden to prove the prosecutor's recitation was erroneous. Consequently, the motion court's conclusion that Movant failed to meet his burden to prove sentencing counsel was constitutionally ineffective for failing to object at sentencing to the prosecutor's recitation of the plea agreement was not clearly erroneous.

Movant's second point is denied, and the motion court's judgment is affirmed.

JENNIFER R. GROWCOCK, J. – OPINION AUTHOR

DON E. BURRELL, J. – CONCURS

GARY W. LYNCH, S.J. – CONCURS

15