James MOREHEAD, Movant–Appellant,

v.

STATE of Missouri, Respondent–Respondent.

No. 25901.

Missouri Court of Appeals, Southern District, Division Two.

Oct. 18, 2004.

Rosalynn Koch, Columbia, MO, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Dora A. Fichter, Asst. Atty. Gen., Jefferson City, MO, for respondent.

JEFFREY W. BATES, Chief Judge.

James Morehead ("Morehead") appeals from an order overruling his Rule 24.035 motion after an evidentiary hearing. His amended motion sought relief on the ground that his guilty plea was involuntary because he did not receive the benefit of his plea agreement. After conducting an evidentiary hearing, the trial court denied relief. We affirm.

## I. Statement of Facts and Procedural History

On May 1, 2001, Morehead pled guilty to the class C felonies of second-degree burglary, second-degree arson and stealing. *See* § 569.170; § 569.050; § 570.030.[1] At the guilty plea and sentencing hearing held on that date, Morehead admitted he had committed the aforementioned crimes by entering the victims' home with the intent to steal, removing property worth more than $750, and then setting the home on fire. After the prosecutor outlined the State's evidence to support the charges, the court determined there was a factual basis for Morehead's guilty plea.

The trial court then discussed the Memorandum of Plea Bargain that had been signed by Morehead. The agreement contained the following statement:

Defendant to enter a plea of guilty to the charges of Count I Burglary in the Second Degree, Count II Arson in the Second Degree, Count III Felony Stealing. If the Defendant is placed on probation, the Court is free to impose any sentence it deems appropriate within the law. If Defendant is not placed on probation the sentence shall not exceed 20 years on each count in the Department of Corrections. It is understood that the State is free to present evidence and argue against probation at sentencing and will oppose any sentence to the Jasper County Jail on a felony charge. The sentences on each count are to run concurrent with each other and, to the extent allowable, concurrent with any sentence imposed in the State of Oklahoma.

The last sentence of this paragraph was included because, at the time of the guilty plea and sentencing hearing, Morehead was on parole from a 15-year sentence previously entered in an Oklahoma case. The State of Oklahoma had filed a detainer with the State of Missouri because of an alleged parole violation by Morehead. After the trial court read the above-quoted statement to Morehead, the following colloquy occurred:

BY THE COURT: So let's stop right there for a moment. You understand that this agreement—that under this agreement the Court may sentence you to up [to] 20 years on each Count?

BY THE DEFENDANT: Yes, sir, Your Honor.

. . . .

BY THE COURT: Also it says here in the agreement that to the extent allowable it will also run concurrent with any sentence imposed in the State of Oklahoma?

---

1. All references to statutes are to RSMo (2000).

BY THE DEFENDANT: Yes, sir, Your Honor.

BY THE COURT: Now, the words to the extent allowable are very important. Do you understand that this Court here in Missouri has no—there's no way in which we can obligate the courts in Oklahoma to do anything? Do you understand that?

BY THE DEFENDANT: Yes, sir.

BY THE COURT: And while I'm agreeable to placing that type of wording in the entry upon the Court's dockets should I accept your plea, there's nothing which will bind those courts in Oklahoma and there's certainly no guarantee that that will actually happen?

BY THE DEFENDANT: Okay.

BY THE COURT: So has [defense counsel] talked to you about that?

BY THE DEFENDANT: Yes, sir, Your Honor.

BY THE COURT: And I know she's aware of that and now you're aware of it as well, correct?

BY THE DEFENDANT: Yes.

BY THE COURT: So although that will be placed there and it will be the position of this Court that if it happens I have no authority whatsoever to bind any Court other than this one.

BY THE DEFENDANT: Yes, sir.

BY THE COURT: Understand that? And when I say "this one" I mean Division One of the Jasper County Circuit Court, correct?

BY THE DEFENDANT: Yes, sir, Your Honor.

After this discussion, Morehead also acknowledged the following facts: (1) he had read and fully understood the Memorandum of Plea Bargain; (2) the plea bargain had been fully explained to him by his attorney; and (3) he knowingly, freely and voluntarily agreed to it. Morehead stated that he was entering a guilty plea to the three charges against him "because I know I'm guilty, Your Honor."

Following the occurrence of these events, the trial court accepted Morehead's guilty plea because "defendant's plea of guilty is made voluntarily and intelligently with the full understanding of the charges and the consequences of the plea...." As authorized by § 558.016.7(3), the trial court sentenced Morehead to a term of 20 years imprisonment on each of these class C felonies and ordered "the sentences to run concurrently with each other and concurrent with the sentences defendant currently faces in the State of Oklahoma."[2]

On August 1, 2001, Morehead then filed a *pro se* motion to vacate, set aside or correct the judgment or sentence pursuant to Rule 24.035.[3] The trial court appointed counsel, who filed an amended motion to set aside his plea. The motion alleged that Morehead's guilty plea was involuntary because he did not receive the benefit of his plea agreement, in that the judgment did not specify Morehead was to serve his sentence in the Oklahoma Department of Corrections.

On October 23, 2001, the trial court entered an order *nunc pro tunc* at Morehead's request. In the order, the trial court corrected its prior sentence and judgment in the following respects: (1) Morehead's Missouri sentences were expressly designated as running "concurrent with the sentence in Oklahoma County,

---

**2.** Before sentencing occurred, the court noted that it had already found Morehead to be a prior and persistent offender when Morehead stood trial for these three offenses in April 2001. The case ended in a mistrial after the jury was unable to reach a verdict.

**3.** All references to rules are to the Missouri Rules of Criminal Procedure (2004).

State of Oklahoma, Case Number CF90–5113 ....."; (2) the Missouri sentences were to "be served in the Oklahoma Department of Corrections until such time as [Morehead] has completed that sentence or until otherwise released from Oklahoma Department of Corrections."; (3) Morehead was to be returned to the Missouri Department of Corrections upon any release from the Oklahoma Department of Corrections; and (4) Morehead was "released from Missouri Department of Corrections into the custody of the Oklahoma Department of Corrections, where he shall answer the parole violation warrant currently outstanding." On December 18, 2001, the Missouri Department of Corrections notified the Oklahoma Department of Corrections by letter that Morehead was available for transportation to Oklahoma.

The docket sheet reveals that there was no further activity with respect to Morehead's Rule 24.035 motion until March 11, 2003. The entry made by the trial court on that date stated Morehead's counsel "was having difficulty getting the Oklahoma authorities to honor this Court's order, and she would prefer to leave this action pending." The court left the matter on the active docket as Morehead's counsel requested.

In June of 2003, the court received a letter from Morehead's counsel "indicating she was having no success in getting anyone to comply with the Nunc Pro Tunc Order." Therefore, counsel requested the previously-filed Rule 24.035 motion be set for evidentiary hearing.

An evidentiary hearing was held on September 8, 2003. Although Morehead was present in person, he did not testify. His counsel asked the trial court to take judicial notice of the underlying criminal file and transcript, which the court did. During the hearing, the trial court noted that Morehead's counsel had been unsuccessfully trying "month-in and month-out to get the Oklahoma Department of Corrections to at least respond to her request...." Morehead rested without adducing any further evidence, and the court took the matter under advisement.

On September 12, 2003, the trial court entered an order overruling Morehead's motion. The court made a factual finding "that movant was, at the time of his plea, fully aware that the Court could not bind or direct Oklahoma authorities to do anything concerning his sentence in the State of Oklahoma." In the trial court's conclusions of law, it denied relief for the following reasons:

> The final claim is that the movant's plea was involuntary in that he did not receive the benefit of the plea bargain. The difficulty now faced is precisely the difficulty the trial court warned movant of when he was entering his plea. The trial court went to great length to make sure the movant understood the risk that he was running. He understood the risk, and he continued to request the trial court to accept his plea and the plea bargain.
>
> It has long been the law that the validity of a plea of guilty depends on whether it was made voluntarily and intelligently. *Brady v. United States*, 397 U.S. 742, 748, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970). A thorough reading of the transcript of the plea hearing convinces the Court that movant entered his plea voluntarily and intelligently as the trial court found in that proceeding. The future expectations that movant had concerning the serving of the sentence in Oklahoma did not render the plea involuntary. The movant was fully informed of the risk of the State of Oklahoma not honoring the agreement. He chose to accept that risk.

While this Court may sympathize with the fact that movant has not been moved to the State of Oklahoma so that he may serve his Missouri sentence while serving the Oklahoma sentence, there is no legal basis for setting aside the judgment and sentence entered in his underlying criminal case, particularly in view of the fact that the trial court amended to the judgment and sentence so that it would conform to the precise language selected by movant and his attorney.

The court, therefore, denied post-conviction relief under Rule 24.035. This appeal followed.

## II. Standard of Review

Appellate review of an order overruling a Rule 24.035 motion for post-conviction relief is limited to a determination of whether the motion court's findings of fact and conclusions of law are clearly erroneous. Rule 24.035(k); *Jenkins v. State,* 9 S.W.3d 705, 707 (Mo.App.1999). Findings and conclusions are clearly erroneous only if, after a review of the entire record, we are left with the "definite and firm impression that a mistake has been made." *Rice v. State,* 988 S.W.2d 556, 558 (Mo.App. 1999). Morehead bore the burden of proving the grounds asserted for post-conviction relief by a preponderance of the evidence. *Jenkins,* 9 S.W.3d at 707.

## III. Discussion and Decision

In Morehead's appeal, he contends the trial court clearly erred in not allowing him to withdraw his guilty plea because: (1) the plea agreement was not performed due to circumstances beyond the control of the parties and the court; and (2) he entered his plea unknowingly and involuntarily because it was based upon his mistaken belief that his Missouri sentences would be served concurrently with his Oklahoma sentence. We find both arguments unpersuasive.

### Point I—Denial of Due Process

Morehead contends he is entitled to withdraw his guilty plea, on due process grounds, because the plea agreement was not performed due to circumstances beyond the control of the parties and the court. As we understand Morehead's argument, his claim that the plea agreement was "not performed" is based on the premise that he lost the benefit of his plea bargain because it is not procedurally possible for him to receive credit on his Oklahoma sentence for time served in Missouri. Morehead's argument is based on three unstated assumptions: (1) the Oklahoma detainer filed against him in Missouri will ultimately result in revocation of his parole; (2) if his parole is ever revoked, he will receive no credit for time spent on parole up to the point of revocation; and (3) revocation will prevent him from receiving any credit against his Oklahoma sentence for any post-revocation time served in Missouri. After examining applicable Oklahoma law, we find none of these assumptions to be true because there are procedures in place that address each of Morehead's implicit concerns.

Before analyzing the three issues set out above, a brief review of Oklahoma law concerning credit for time spent on parole is necessary. At the time Morehead pled guilty to the three Missouri offenses, he was on parole from a 15–year sentence for a crime previously committed in Oklahoma. Under Oklahoma law, a parolee receives credit against his sentence for time spent on parole.[4] Morehead's

---

4. Title 57, § 350.A states, in pertinent part, that "[e]very person ... who has been or who

in the future may be sentenced to imprisonment in any state penal institution shall, in

problem arose in this case because Oklahoma filed a detainer with the State of Missouri, based on an alleged probation violation.[5] A probation and parole officer who has reasonable grounds to believe that a parolee has violated the terms and conditions of his parole is required to notify the Oklahoma Department of Corrections. Okla. Stat. Ann. tit. 57, § 516.A. If it is determined that the facts justify revocation action, the Department of Corrections shall issue an arrest warrant for the parolee. *Id.* When the alleged parole violator is located in another state, a requisition request from the Governor is forwarded to the proper authority in that jurisdiction requesting the parolee's return to Oklahoma. Okla. Stat. Ann. tit. 22, § 1141.23 (2003). We have not been provided with a copy of the detainer filed against Morehead, but we infer that it was filed after the foregoing procedures were invoked. Accordingly, once the warrant was issued by Oklahoma, Morehead stopped receiving credit for time spent on parole pending a hearing on whether his parole should be revoked. Okla. Stat. Ann. tit. 57, § 516.A.[6]

■ As we understand Morehead's argument, he claims the filing of the Oklahoma detainer against him will permanently prevent him from receiving any further credit for time spent on parole or for time served in a Missouri prison. It is in these respects that Morehead contends his due process rights have been violated. We find Morehead's arguments meritless because Oklahoma has procedural protections in place to reinstate Morehead's right to receive credit for time spent on parole and to permit Morehead to receive credit for time served in Missouri.

The detainer against Morehead stemmed from an alleged parole violation. Under Oklahoma law, Morehead will be entitled to a hearing on the issue of whether the conditions of his parole were violated as alleged. *See Chase v. Page,* 456 P.2d 590, 595 (Okla.Crim.App.1969). If his parole is revoked after such a hearing, he will have an opportunity to challenge that decision in a post-conviction proceeding. *See* Okla. Stat. Ann. tit. 22, 1080(e); *Frazier v. State,* 59 P.3d 512, 514 (Okla.Crim. App.2002). Assuming a violation of the terms and conditions of Morehead's parole is eventually proven, the Department of Corrections may, in its discretion, choose not to revoke his parole and instead impose other disciplinary sanctions or programmatic services in lieu of revocation. *See* Okla. Stat. Ann. tit. 57, § 516.B. If Oklahoma ultimately decides not to revoke Morehead's parole, he will receive credit against his Oklahoma sentence for the

---

addition to any other deductions provided for by law, be entitled to a deduction from his sentence for all time during which he has been or may be on parole." Except as otherwise provided, all references to Oklahoma statutes are to Okla. Stat. Ann. (2004).

**5.** "A detainer is a request filed by a criminal justice agency with the institution in which the prisoner is incarcerated, asking the institution either to hold the prisoner for the agency or to notify the agency when release of the prisoner is imminent." *Carchman v. Nash,* 473 U.S. 716, 719, 105 S.Ct. 3401, 87 L.Ed.2d 516 (1985). In this context, the detainer filed against Morehead "is an internal administrative mechanism to assure that an inmate subject to an unexpired term of confinement will not be released from custody until the jurisdiction asserting a parole violation has had an opportunity to act—in this case by taking the inmate into custody or by making a parole revocation determination." *Moody v. Daggett,* 429 U.S. 78, 80 n. 2, 97 S.Ct. 274, 50 L.Ed.2d 236 (1976).

**6.** This statute states, in pertinent part, that "[p]arole time shall cease to run after the issuance of a warrant for arrest by the Department of Corrections, and earned credits shall not be accrued during any period of time when the parolee is incarcerated pending revocation action by the Governor."

time he spent on parole pursuant to Okla. Stat. Ann. tit. 57, § 350.A.

Even if Morehead's parole is ultimately revoked as a result of the alleged violation, he may still receive credit for time spent on parole prior to the revocation. Title 57, § 350.A states that the deduction a convict receives against his sentence for time spent on parole "shall at the discretion of the paroling authority apply to time on a parole which has been or shall be revoked."

Oklahoma also has a specific procedural remedy in place that would allow Morehead to receive credit against his Oklahoma sentence for time served in Missouri. *See* Okla. Stat. Ann. tit. 21, § 61.3 (2003). This statute states:

> When a defendant is on parole from a sentence rendered by an Oklahoma state court and is also under sentence from a federal court or another state's court, the Governor may revoke the defendant's parole and direct that custody of the defendant be relinquished to the federal or another state's authorities and that such parole revocation may run concurrently with the federal or another state's sentence which has been imposed. The Governor may also order that a parole revocation run concurrently with any other sentence rendered by an Oklahoma state court.

■ It is well-established that, unlike some other legal rules, due process is not a technical concept with a fixed content unrelated to the time, place and circumstances. *Gilbert v. Homar*, 520 U.S. 924, 930, 117 S.Ct. 1807, 138 L.Ed.2d 120 (1997). Instead, "due process is flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). At the hearing on Morehead's Rule 24.035 motion, he presented no evidence concerning the nature of his alleged parole violation. There was no proof tending to show that his parole will, in fact, be revoked by Oklahoma. There was no effort to show that he had unsuccessfully sought to avail himself of any of the foregoing procedural remedies available in Oklahoma. Accordingly, we find no basis to conclude that Morehead's due process rights have been violated. Because it is still procedurally possible for Morehead to receive credit against his Oklahoma sentence for time spent on parole and for time served in Missouri, he has failed to carry his burden of proving that he has lost the benefit of his plea bargain. Therefore, we reject his assertion that he should be permitted to withdraw his guilty plea on due process grounds.

■ In so holding, we have not ignored Morehead's argument that he had a due process right to be transferred to Oklahoma in order to execute the plea agreement. Morehead bases this argument on *Chitwood v. Dowd*, 889 F.2d 781 (8th Cir. 1989). In *Chitwood*, the defendant escaped from the Oklahoma Department of Corrections while serving a five-year sentence. After committing a burglary in Missouri, he was sentenced to seven years imprisonment by the Circuit Court of Barry County. *Id.* at 782. The Barry County judge ordered that the Missouri sentence run concurrently with the Oklahoma sentence, and it was his intention that Chitwood be transferred to Oklahoma to serve the Barry County sentence. Oklahoma was willing to accept transfer of Chitwood, but the Missouri Department of Corrections failed to transfer him. *Id.* at 782–83. Chitwood first sought to obtain the relief he needed by pursuing various remedies in Oklahoma. *Id.* at 783. When these failed, he sought *habeas corpus* relief in federal court. Chitwood was not seeking to withdraw his guilty plea, but to obtain what he

believed was a correct execution of his Missouri sentence. *Id.* at 784. On these facts, the Eighth Circuit held Chitwood had a legitimate expectation, protected by due process, that the Missouri Department of Corrections would transfer him to Oklahoma to serve his sentence. *Id.* at 786.

■ *Chitwood* does not support Morehead's argument because it is distinguishable from the case at bar. First, Morehead is seeking to withdraw his guilty plea, which is not the relief sought by Chitwood. Chitwood was satisfied with his sentence and merely challenged its execution. *Id.* at 784. Second, Morehead had no legitimate expectation that he would be transferred to Oklahoma to serve his sentences. Unlike Chitwood, Morehead was well aware when he entered his plea agreement that Oklahoma would not be bound to honor a Missouri judgment ordering any future Oklahoma sentence to run concurrently with the Missouri sentences.[7] Third, as Morehead forthrightly admits, his failure to be transferred to Oklahoma was not the fault of the Missouri trial court or the Missouri Department of Corrections. The court's *nunc pro tunc* order expressly permitted Morehead to be transferred to Oklahoma to serve his sentences, and the Missouri Department of Corrections complied with that order by notifying Oklahoma that Morehead was available for transport. It was Oklahoma that refused to accept transfer of Morehead after he was tendered by Missouri. Oklahoma was under no due process obligation to accept Morehead as an inmate in its correctional system pursuant to the order of a Missouri court.[8] Fourth, Chitwood exhausted his Oklahoma remedies before seeking *habeas corpus* relief. Morehead has not done so. As noted above, Oklahoma law provides several procedural mechanisms which could permit Morehead to receive credit against his Oklahoma sentence for time spent on parole and/or for time served in Missouri.

We conclude that Morehead has failed to establish any due process grounds for

---

**7.** At the time Morehead was sentenced in Missouri, he was on parole for the Oklahoma offense. Since he was not serving an Oklahoma sentence at the time, the trial court was required to comply with § 558.026.2. *See State v. Dailey*, 53 S.W.3d 580, 583–84 (Mo. App.2001). This subsection of the statute states, in pertinent part, that "[i]f a person who is on probation, parole or conditional release is sentenced to a term of imprisonment for an offense committed after the granting of probation or parole or after the start of his conditional release term, the court shall direct the manner in which the sentence or sentences imposed by the court shall run with respect to any resulting probation, parole or conditional release revocation term or terms." The inclusion of language in the trial court's judgment specifying that the Missouri sentences "run concurrent" with the Oklahoma sentence complied with this statutory mandate.

**8.** *See, e.g., Kassulke v. Briscoe–Wade*, 105 S.W.3d 403, 409–10 (Ky.2003) (one sovereign's order for a concurrent sentence cannot bind another sovereign, and courts have rejected the argument that due process requires a jurisdiction to grant custody credit for time an inmate served under a concurrent sentence both imposed by and served in a separate jurisdiction); *Wallace v. State*, 612 P.2d 284, 285 (Okla.Crim.App.1980) (there is no due process requirement that Oklahoma accept transfer of the prisoner or credit time he served in another state to his Oklahoma sentence); *Jake v. Herschberger*, 173 F.3d 1059, 1065 (7th Cir.1999) (a state prisoner whose sentence is to run concurrently with a federal sentence has a right to be tendered to federal authorities, but they are under no obligation to accept the tendered prisoner); *Isreal v. Marshall*, 125 F.3d 837, 839 (9th Cir.1997) (California law permitting prisoner to be transferred to Missouri to effectuate concurrency did not create a due process right to be accepted by Missouri, which refused to accept him; it only required California to tender the prisoner to Missouri); *Aycox v. Lytle*, 196 F.3d 1174, 1179 (10th Cir.1999) (New Mexico was not obligated to extradite prisoner to cause his sentences to run concurrently).

withdrawing his guilty plea. Therefore, his first point on appeal is denied.

### Point II—Unknowing and Involuntary Guilty Plea

Morehead also claims his plea was unknowing and involuntary because he pled guilty under the mistaken belief that he was going to serve his Missouri sentence concurrently with his Oklahoma sentence. "When a defendant claims to have pleaded guilty based on a mistaken belief about his sentence, the test is whether a reasonable basis exists in the record for such belief. Only when it appears that a movant's belief is based upon positive representations on which he is entitled to rely will we conclude a movant's mistaken belief is reasonable." *McNeal v. State*, 910 S.W.2d 767, 769 (Mo.App.1995) (citations omitted).

Morehead argues that his guilty plea was involuntary for the reasons discussed in *McNeal, supra; Arnold v. State*, 70 S.W.3d 613 (Mo.App.2002); and *Cross v. State*, 970 S.W.2d 840 (Mo.App.1998). Each case, however, is distinguishable from the case at bar. All three cases were remanded for the purpose of conducting an evidentiary hearing to determine whether the movants therein reasonably relied on positive representations that they would serve their Missouri sentence concurrently in another jurisdiction. *McNeal*, 910 S.W.2d at 769; *Arnold*, 70 S.W.3d at 615; *Cross*, 970 S.W.2d at 842–43.

These cases do not aid Morehead because he has already received an evidentiary hearing on the claims presented in his motion. At Morehead's evidentiary hearing, he merely asked the trial court to take judicial notice of what was contained in the underlying criminal file and the transcript of the guilty plea and sentencing hearing. After reviewing this evidence, the trial court found Morehead did not reasonably rely on a positive representation that he would serve his Missouri sentences in Oklahoma because no such representation was made. Specifically, the trial court found Morehead was fully informed of the risk that Oklahoma might not honor the plea agreement, and he chose to accept that risk by pleading guilty. The court's finding is not clearly erroneous. Consequently, no reasonable basis exists in the record for concluding that Morehead's guilty plea resulted from a mistaken belief about his sentences. *See Woods v. State*, 993 S.W.2d 530, 536 (Mo.App.1999) (defendant's guilty plea was not involuntary because the record established that he knew he might have to serve a sentence in some other case consecutively to the sentence imposed in the instant case by the trial court); *Jenkins v. State*, 9 S.W.3d 705, 712 (Mo.App.1999) (where defendant was told that he would receive the maximum credit for time served allowed by law, there was no reasonable basis in the guilty plea record for movant to believe that he would be given credit towards his Greene County sentence for the period of time he spent in prison arising from the Douglas County sentence). Therefore, the trial court properly determined that Morehead's guilty plea was not involuntary. His second point is denied.

The findings and conclusions of the motion court were not clearly erroneous, and we do not have a definite and firm impression that a mistake was made. *See* Rule 24.035(k); *Jenkins*, 9 S.W.3d at 707. Therefore, the trial court's order overruling Morehead's Rule 24.035 motion is affirmed.

PARRISH, P.J., and SHRUM, J., concur.