**Kenneth Joe WATTS, Appellant,**

v.

**STATE of Missouri, Respondent.**

No. 28550.

Missouri Court of Appeals, Southern District.

April 7, 2008.

---

727

Kent Denzel, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Robert J. (Jeff) Bartholomew, Asst. Atty. Gen., for respondent.

ROBERT S. BARNEY, Presiding Judge.

Appellant Kenneth Joe Watts ("Movant") appeals the motion court's denial following an evidentiary hearing of his Amended Motion to Vacate, Set Aside or Correct the Sentence and Judgment filed pursuant to Rule 24.035.[1] We affirm the judgment of the motion court.[2]

The record reveals Movant was charged by Felony Information on October 29, 2003, with one count of the Class A felony of robbery in the first degree, a violation of section 569.020, and one count of the unclassified felony of armed criminal action, a violation of section 571.015. Thereafter, on July 30, 2004, pursuant to a plea agreement, Movant pled guilty to the aforementioned charges.

At the guilty plea hearing, Movant stated he understood the charges against him; the terms of his plea agreement; that he had a right to proceed to trial; and that he was waiving certain rights by pleading guilty. Movant also stated he had sufficient time to talk with his counsel about his case and the plea agreement and he was "satisfied" with his counsel's work on his case. Further, Movant stated he had not been threatened to plead guilty and he was pleading guilty because he committed

1. All rule references are to Missouri Court Rules (2007) and all statutory references are to RSMo 2000.

2. This is the second time that this Court considers allegations of error arising from Movant's amended Rule 24.035 motion. Previously this Court reversed the prior motion

court's order granting the State's "Motion to Dismiss Without an Evidentiary Hearing" and the matter was remanded to the motion court for entry of specific findings of fact and conclusions of law as required by Rule 24.035(j). *See Watts v. State,* 206 S.W.3d 413, 418 (Mo. App.2006).

the crimes charged. After the State recited the factual basis for the plea, Movant agreed to the State's facts as recited and admitted that he had committed the crimes with which he was charged. Movant also stated he understood the range of punishment as set out by the State and the punishment stated in the plea agreement.[3]

Thereafter, Movant expressly pled guilty and the trial court convicted him of those crimes after finding he had "freely, voluntarily and intelligently" pled guilty "beyond a reasonable doubt based on his freely-given testimony."

At the sentencing hearing on October 29, 2004, the court sentenced Movant to fifteen years in the Missouri Department of Corrections on the robbery charge and three years on the armed criminal action charge with the sentences to run "concurrent with each other [and] any existing sentences." Thereafter, Movant again confirmed to the court that he understood his sentence and that the range of punishment he received was as expected based on the plea agreement. Movant also reiterated that his counsel had done everything expected of him during the case. The court then found probable cause to believe Movant was provided effective assistance of counsel.

On January 21, 2005, Movant filed a *pro se* Rule 24.035 motion. Thereafter, the motion court appointed counsel to represent Movant and an amended Rule 24.035 motion was filed on September 2, 2005, by his appointed counsel. The motion court denied Movant's amended Rule 24.035 motion on February 21, 2006, without an evidentiary hearing. As previously related, Movant appealed that ruling to this Court and the motion court's ruling was reversed for further findings and an evidentiary hearing if necessary. *See Watts*, 206 S.W.3d at 418. Thereafter, the motion court held an evidentiary hearing on March 16, 2007, and subsequently entered an Order denying Movant's amended Rule 24.035 motion on April 30, 2007. This appeal followed.

Now, in his sole point relied on, Movant asserts the motion court erred in denying his amended Rule 24.035 motion which asserted he received ineffective assistance of counsel that "rendered his guilty plea unknowing, unintelligent, and involuntary...." In particular, Movant maintains his plea counsel "initially relayed a plea offer of 15 years for first degree robbery and three years for armed criminal action, and told [Movant] he would have to serve 85 percent of the sentence for robbery...."[4] Movant asserts his "counsel later told [him] that there was a new offer for 15 and three years and made no mention of the 85 percent requirement, thus leading [Movant] reasonably to believe that that provision would not apply to him...." According to Movant, he "would have gone to trial rather than plead guilty but for counsel's misleading advice."

**3.** The plea agreement also provided the State would dismiss controlled substance charges pending against Movant and required Movant to pay $68.00 for the Crime Victim's Compensation Fund.

**4.** Section 558.019.3 sets out that:
[o]ther provisions of the law to the contrary notwithstanding, any defendant who has pleaded guilty to or has been found guilty of a *dangerous felony* as defined in section 556.061, RSMo, and is committed to the department of corrections *shall be required to serve a minimum prison term of eighty-five percent of the sentence imposed by the court* or until the offender attains seventy years of age, and has served at least forty percent of the sentence imposed, whichever occurs first.
(Emphasis added.) "[R]obbery in the first degree," the crime with which Movant is charged, is defined in section 556.061(8) as a dangerous felony.

■ "Appellate review of the denial of a Rule 24.035 motion for post-conviction relief is limited to a determination of whether the motion court's findings of fact and conclusions of law are clearly erroneous." *Boyd v. State*, 205 S.W.3d 334, 338 (Mo. App.2006); *see* Rule 24.035(k). "Findings and conclusions are clearly erroneous only if, after a review of the entire record, we are left with the 'definite and firm impression that a mistake has been made.'" *Morehead v. State*, 145 S.W.3d 922, 927 (Mo.App.2004) (quoting *Rice v. State*, 988 S.W.2d 556, 558 (Mo.App.1999)). We presume that the motion court's findings and conclusions are correct. *Butts v. State*, 85 S.W.3d 132, 134 (Mo.App.2002). "Movant bears the burden of proving, by a preponderance of the evidence, that the motion court erred." *Huth v. State*, 976 S.W.2d 514, 516 (Mo.App.1998).

■ "Upon a plea of guilty, a criminal defendant waives his constitutional rights, including his Sixth Amendment right to trial and Fifth Amendment privilege against self-incrimination." *Id.* "The due process clause of the Fourteenth Amendment precludes a finding of a valid waiver of those rights unless it is knowing, intelligent, and voluntary." Id. "The trial court and counsel have a duty to inform the defendant of the 'direct' consequences of pleading guilty, but not the 'collateral' consequences." Id. "Direct consequences 'are those which definitely, immediately, and largely automatically follow the entry of a plea of guilty.'" *Id.* at 516–17. "'A "collat-

eral consequence" of a guilty plea is one which does not definitely, immediately, and largely automatically follow the entry of a plea of guilty.'" *Pettis v. State*, 212 S.W.3d 189, 193–94 (Mo.App.2007) (quoting *Sadler v. State*, 965 S.W.2d 389, 391 (Mo.App. 1998)).

■ "To prevail on a claim of ineffective assistance of counsel where a movant has entered a plea of guilty, a 'movant must show his counsel's representation fell below an objective standard of reasonableness and that, as a result, he was prejudiced.'" *Boyd*, 205 S.W.3d at 338 (quoting *Cupp v. State*, 935 S.W.2d 367, 368 (Mo. App.1996)); *see Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). "Movant must show, but for the conduct of his trial attorney about which he complains, he would not have pleaded guilty but would have insisted on going to trial." *Cupp*, 935 S.W.2d at 368. Where, as here, there is a negotiated plea of guilty, a claim of "ineffective assistance of counsel is immaterial except to the extent it impinges upon the voluntariness and knowledge with which the guilty plea was made." *Id.*

■ "While there is no relief available on a claim that counsel failed to advise as to collateral consequences of pleading guilty, a claim that plea counsel misadvised movant regarding a particular consequence upon which movant relied in deciding to plead guilty may result in a finding of ineffective assistance of counsel." [5]

---

5. In *Reynolds v. State*, 994 S.W.2d 944, 946 (Mo. banc 1999), our high court set out that "eligibility for parole is considered to be a collateral consequence of the plea; thus, information about eligibility for parole is not among those direct consequences about which a defendant must be informed in order for the plea to be entered voluntarily and intelligently."

Further, this Court has previously set out that "[i]f counsel affirmatively gives a criminal client erroneous advice, the voluntariness of the plea depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases and whether or not the defendant was prejudiced." *State v. Abernathy*, 764 S.W.2d 514, 516 (Mo.App. 1989) (internal quotations and citations omitted); *see also Shackleford v. State*, 51 S.W.3d 125, 128 (Mo.App.2001).

*Watts*, 206 S.W.3d at 416. " 'Mistaken beliefs about sentencing affect a defendant's ability to knowingly enter a guilty plea if the mistake is reasonable and the mistake is based upon a positive representation upon which the movant is entitled to rely.' " *Id.* (quoting *Dobbins v. State*, 187 S.W.3d 865, 866 (Mo. banc 2006)). " 'If a defendant claims he pleaded guilty because he was misled, the court must determine whether that belief by which he claims to have been misled was reasonable.' " *Id.* (quoting *Drone v. State*, 973 S.W.2d 897, 900 (Mo.App.1998)).

At the evidentiary hearing on Movant's amended Rule 24.035 motion, Movant testified that at the time he pled guilty he felt there had been two plea offers presented to him by his counsel, Rod Hackathorn ("Mr. Hackathorn"). Movant related it was his understanding that "[o]ne [offer] was for the 15 [years] with 85 percent behind it [on the robbery charge] with 3 years ..." on the armed criminal action charge and "[t]he second [offer] was the 15 ... with 85 percent on the 3 years." He stated he met with Mr. Hackathorn "two, three weeks" before his guilty plea at which time they discussed the first plea offer and he met with Mr. Hackathorn again "almost a week" before his guilty plea to discuss the second plea offer. He also related he told Mr. Hackathorn he did not want to accept the first plea offer, because he "could get better than that ..." and "[b]ecause of the 85 percent attached to the 15" years on the robbery charge. With regard to the so-called second plea offer, Movant testified he understood that under the second offer "there wouldn't be ... 85 percent on the 15, but there would be on the 3 years. [He] would have to serve all of the 3 years." Movant related he told Mr. Hackathorn the second offer "would be fine." Movant also testified that when he arrived at the Department of Corrections he discovered there was an 85 percent requirement on the 15 year robbery conviction. He stated that if he had known that at the time he pled guilty, he "would have declined [the plea offer] and waited for another offer."

Saliently, Movant admitted Mr. Hackathorn "didn't explicitly say" there was not an 85 percent requirement on the 15 year sentence in the second offer, but Movant felt that it was presented to him "as a new offer" such that the 85 percent requirement had been dropped because it was not mentioned at that time. Movant further admitted he "assumed" the second offer did not contain the 85 percent requirement, because Mr. Hackathorn did not "expressly" mention it. He stated he did not ask Mr. Hackathorn about the 85 percent provision in relation to the second offer and he just assumed it was off the table without asking for clarification. Movant also admitted having heard Mr. Hackathorn declare to the court at the sentencing hearing that Movant would "still get a minimum of 85 percent of 15 years hanging over his head," but Movant testified that he thought Mr. Hackathorn was talking about issues relating to probation.

At the motion hearing, Mr. Hackathorn testified he was familiar with the 85 percent statutory requirement that certain dangerous felony charges carry a requirement that a defendant serve 85 percent of his sentence. He related that in his career he had never advised a client that the statutory requirement could be waived or dismissed as part of plea negotiations and he was aware that the requirement did not apply to armed criminal action cases. Mr. Hackathorn noted that a conviction for armed criminal action carries a minimum sentence of three years and he understood that the first three years must be served in full, but the remainder of the sentence is governed by the sentencing guidelines.

He related he had never advised Movant, or any other client, that he would have to serve 85 percent of an armed criminal action charge, but not serve 85 percent of the dangerous felony to which it was attached.

Mr. Hackathorn also testified that during plea negotiations Movant "mentioned concerns about the 85 percent on the robbery," and Mr. Hackathorn was not sure "if [Movant] was more concerned about lowering the number of years ... or trying to get it reduced to a robbery second, but [Movant] did want further negotiations beyond the initial offer of the 15 and 3." Mr. Hackathorn stated he discussed plea offers with Movant two or three times. He also related that when he first talked with Movant he went over the sentencing range with him and told him "about the statutory provision and that it's 85 percent." Mr. Hackathorn stated that when he first presented the offer to Movant he "reminded him of that ... [he] told him that it was 15 years on the robbery first and 3 years on the armed criminal action." He related he discussed with Movant the fact that he was going to propose alternative sentencing and wanted to discuss with the judge the possibility of probation.

Mr. Hackathorn also testified that when Movant rejected the first plea offer, Mr. Hackathorn advised him that he had spoken with the State and he "did not believe [they] were going to get any better offer than what was already on the table." Mr. Hackathorn said there never technically was a second offer and that he told Movant "the numbers were the same" after he spoke with the State following rejection of the first offer, but that the State did agree at some point during the course of negotiations not to oppose probation.

Mr. Hackathorn also related that he doubted "very seriously that [he] reiterated" the 85 percent requirement in his second conversation with Movant about the plea agreement and he normally would not "affirmatively" repeat such information at that point in negotiations. However, he related that it was his practice to repeatedly ask his clients if they had any questions or needed more explanation of the issues relating to their cases. He stated Movant never expressed any need for more information and seemed to understand the proceedings and plea agreement negotiations.

Following the evidentiary hearing, in its findings of fact and conclusions of law, the motion court found "credible the testimony of both Movant and his plea counsel that counsel made a positive representation regarding the eighty-five percent rule at his initial meeting with Movant." The motion court also found that during the second conversation with Mr. Hackathorn "Movant simply assumed that the eighty-five percent provision—a caveat Movant has vigorously contended was a 'deal breaker' provision—had somehow disappeared." The motion court then found that

it is neither reasonable to expect counsel to repeat this aspect of the plea each and every time a plea is discussed or risk "misadvising" the client, nor is it reasonable for a defendant to assume without question that a provision he claims was so odious to him that he would never plead to such an offer had somehow disappeared simply because his attorney fails to mention it at every meeting.

The motion court further noted Movant failed to "raise before the sentencing court any questions or concerns that may have suddenly arisen when his counsel, in arguing that the court not revoke Movant's probation, [observed out loud] that Movant 'still had, at a minimum 85 percent of 15 years hanging over his head.'" Accordingly, the motion court found Movant had not

proven "he was affirmatively misled concerning what was a collateral consequence of his plea" and denied Movant's amended Rule 24.035 motion.

In the present matter, the record supports the proposition that Movant was not given incorrect advice from Mr. Hackathorn nor was he misinformed about the amount of his sentence. The motion court rejected "the variations Movant ha[d] submitted of his allegation that he was affirmatively misled concerning what was a collateral consequence of his plea" and found "credible the testimony of Movant's counsel concerning the discussion he had with Movant...." Where Movant's testimony conflicted with that of Mr. Hackathorn, the motion court made a specific credibility determination in favor of the testimony given by Mr. Hackathorn and against the testimony given by Movant. " 'On a claim of ineffective assistance of counsel, the motion court is free to believe or disbelieve any evidence, whether contradicted or undisputed, including the movant's testimony.' " *Berry v. State*, 225 S.W.3d 457, 461–62 (Mo.App.2007) (quoting *Moore v. State*, 207 S.W.3d 725, 729 (Mo. App.2006)) (internal quotation omitted). " 'Credibility of the witness is a determination to be made by the motion court' " and " '[t]his Court must defer to the motion court's determination on matters of credibility.' " *Berry*, 225 S.W.3d at 462 (quoting *White v. State*, 122 S.W.3d 118, 119 (Mo. App.2003)).

Here, Mr. Hackathorn credibly informed Movant at their first meeting that he would be required to serve 85 percent of his sentence on the robbery charge. Mr. Hackathorn testified at the evidentiary hearing that he knew the requirements of section 558.019 and had never informed a client that the requirements could be waived or dismissed. Further, Mr. Hackathorn testified he had never advised and would never have advised a client that he would have to serve 85 percent of an armed criminal action charge and not 85 percent on the underlying robbery charge. Mr. Hackathorn testified he never informed Movant the 85 percent requirement would not apply to the robbery charge.

Movant's claim is that his plea was involuntary because he was affirmatively misled by his counsel. "Such a claim is tested by whether [M]ovant's belief was reasonable." *State v. Rice*, 887 S.W.2d 425, 428 (Mo.App.1994). "While an individual may proclaim he had a certain belief and may subjectively believe it, if it was unreasonable for him to entertain such a belief at the time of the plea proceeding, relief should not be granted." *Id.* "[W]here there is no reasonable basis for the belief in light of the guilty plea record, [a] movant is not entitled to relief." *Id.*

Here, given the factual circumstances of the matter, including the credibility determinations made by the motion court, it is our view that it was not reasonable for Movant to have believed that he would not have to serve 85 percent of his prison time as a result of pleading guilty to the charge of robbery in the first degree. Movant's assumption that the so-called second offer did not contain the 85 percent requirement, because Mr. Hackathorn had not "expressly" mentioned it, is unreasonable.

This Court agrees with the motion court's finding that Movant had not proven "he was affirmatively misled concerning what was a collateral consequence of his plea." Movant's contention that his guilty plea was not knowing, voluntary, or intelligent because his counsel misled him into believing he would not have to serve 85 percent of his prison time for the offense of robbery in the first degree is without merit. *See Drone*, 973 S.W.2d at 902. Point denied.

The judgment of the motion court is affirmed.

RAHMEYER, J., and LYNCH, C.J.