Craig Anthony HILL, Appellant,

v.

STATE of Missouri, Respondent.

No. SD 29559.

Missouri Court of Appeals,
Southern District,
Division One.

Jan. 8, 2010.

Robert W. Lundt, St. Louis, for Appellant.

Chris Koster, Atty. Gen., and Terrence M. Messonnier, Asst. Atty. Gen., Jefferson City, for Respondent.

ROBERT S. BARNEY, Judge.

In his sole point relied on, Craig Anthony Hill ("Movant") appeals the motion court's denial following an evidentiary hearing of his post conviction motion filed pursuant to Rule 24.035, premised on his assertion of ineffective assistance of counsel which caused him to plead guilty to the crime of passing a bad check when, as he maintains, he had a viable defense to the crime.[1] We affirm the denial of Movant's postconviction motion.

The record reveals Movant was charged by Felony Information on November 15, 2005, with one count of the Class D felony of passing bad checks, a violation of section 570.120.[2] Thereafter, on August 15,

---

1. All rule references are to Missouri Court Rules (2007) and all statutory references are to RSMo Cum.Supp.2002.

2. A person commits the crime of passing a bad check when the person makes, issues, or passes a check knowing that there is no such account in the bank upon which it is drawn, and fails to pay the check within ten days after receiving actual notice in writing that it has not been paid. § 570.120.1. At the time this crime was committed, passing a bad check was classified as a class D felony when the issuer of the check had no account with the bank. § 570.120.4(2).

Here, the Information charged that "on or about 4/27/2005 ... [Movant], with purpose to defraud, issued a check in the amount of $25.00, drawn upon a non-existent account with FIRST STATE COMMUNITY BANK [("the Bank")], dated 4/17/2005, payable to Kwik Chek, knowing that it would not be paid...."

Further, at the time the Information was filed Movant was on parole for receiving stolen property.

2006, pursuant to a plea agreement, Movant pled guilty to the aforementioned charge.

At the guilty plea hearing, Movant stated he understood the charges against him; that he had a right to proceed to trial; that he understood the terms of his plea agreement;[3] and that he was waiving certain rights by pleading guilty. Movant also stated he understood the range of punishment as set out by the State and the punishment set out in the plea agreement. Movant also testified he was "satisfied" with his counsel's work on his case and he related he had discussed with him the terms of the plea agreement. Further, Movant stated he had not been threatened in order to plead guilty and he was pleading guilty because he committed the crime charged. Thereafter, Movant expressly pled guilty and the trial court convicted him of the charged crime after finding his guilty plea was made "freely and voluntarily and with a full understanding of the rights and consequences of that plea." Pursuant to the plea agreement, the trial court suspended imposition of sentence, placed Movant on two years supervised probation, required him to pay the ordered restitution, and ordered him to otherwise comply with the terms of his plea agreement.

On August 2, 2007, the State filed an application to revoke Movant's probation due to the filing of new charges against Movant by the State. On October 2, 2007, Movant waived his right to a formal hearing on the State's revocation application and admitted to pleading guilty on September 6, 2007, to the misdemeanor charge of domestic assault in the third degree. The trial court then revoked Movant's probation and sentenced him to a term of four years in the Missouri Department of Corrections.

On October 29, 2007, Movant filed a *pro se* Rule 24.035 motion. Thereafter, the motion court appointed counsel to represent Movant and an amended Rule 24.035 motion was filed on August 18, 2008. The motion court held an evidentiary hearing on October 27, 2008.

At the hearing, Movant testified he did not dispute the fact that he wrote the check at issue and that he wrote the check with the knowledge that his "account was in the negative ..." because he knew he "had overdraft protection ... on [his] account ...;" however, he was adamant that at the time the check was written he "didn't know that the Bank had closed [his] account." Movant testified his appointed counsel, William Carter ("Mr. Carter"), had encouraged him to take the plea agreement, assured him he would not go to prison, and told him that even if he violated the terms of his probation he would only be incarcerated for two years. Movant also related that Mr. Carter led him to believe that he would otherwise be charged with a felony on a separate dishonored check he had written to a bail bondsman. He stated Mr. Carter told him that, in addition to the bail bondsman check, the State had "a lot of [his] checks" and it was "going to charge [him] with a felony on each one of them."[4] Saliently, he related

---

**3.** The State agreed to dismiss another case which was pending against Movant and to recommend a suspended imposition of sentence, two years of supervised probation with a special condition of restitution on all outstanding bad checks, and, fees that, ... will be a total of $84, and that he make a $300 payment ... to the Law Enforcement Assistance Expense Fund, and after all his financial obligation's are met, and if he has no probation violations, the State would have no objection to his probation being unsupervised.

**4.** The State apparently had six to ten other checks written on this account by Movant

the only reason he pled guilty to the crime charged here was because of the possibility that he would be facing charges on these other checks.

In his testimony, Movant admitted that at the time of his guilty plea he was satisfied with Mr. Carter's services, but he later did his own research and came to believe that "things weren't played right" by Mr. Carter. He stated that he had "tried to discuss with Mr. Carter about the case . . . but [they did not] see eye to eye. . . ." He further related he only spent an hour talking about his case with Mr. Carter in the year and a half that Mr. Carter represented him.

Mr. Carter testified he reviewed the documents in the State's file, and discussed the case and the plea agreement at length with the State prior to recommending that Movant accept the plea agreement. He related he received correspondence from the State which included a summary of the State's evidence against Movant, including a statement from the Bank's president, who testified at the preliminary hearing and who was prepared to testify at trial, that "he sent notice to [Movant] explaining to him that his account was closed." He, likewise, related he was also made aware of Movant's other outstanding checks, which were written while he was on parole for another crime, and he advised Movant that "[h]e could face charges on those, as well." He stated he did not "tell [Movant] whether they would be felonies or misdemeanors. . . ." He related that he felt, based on Movant's situation and his criminal record, that it was in Movant's best interests to accept the plea agreement offered by the State and to plead guilty to the crime charged. Mr. Carter also related he would have taken the matter to trial if Movant had so wished, but he "had zero expectations of

between January of 2004 and August of 2005

being able to win the trial for him." Additionally, Mr. Carter testified he explained to Movant the meaning of a suspended imposition of sentence and the possibility that a probation violation could result in his serving jail time. He related he sent Movant a "final letter" that explained "that if he violated his probation, he could be sentenced to any sentence available for this type of offense, which is up to two to four years. . . ." He stated he and Movant "didn't get along too well," he was "aggressive" in his dealings with Movant, and he had even tried to withdraw from the matter due to Movant's distrust of him. He related he "zealously" represented Movant and tried for over a year to get a plea agreement with the State.

On November 10, 2008, the motion court entered its "Findings of Fact and Conclusions of Law" in which it found, in part, that "Mr. Carter made a sufficient investigation and found that the [B]ank had notified Movant that his account had been closed by the [B]ank. Movant knew that he was pleading guilty to a class D felony." Accordingly, the motion court denied Movant's request for postconviction relief under Rule 24.035. This appeal by Movant followed.

In his sole point relied on, Movant maintains the motion court erred in denying his amended Rule 24.035 motion in which he asserted he received ineffective assistance of counsel in that plea counsel, Mr. Carter, "failed to conduct [an] adequate investigation concerning the [Bank's] lack of notice to [Movant] that it had closed [his] account on August 20, 2005, prior to [Movant's] draft of a check one week later on August 27, 2005." He maintains he "relied on counsel's assertion that he had no defense to passing a bad check, his decision to plead guilty was not voluntarily made" and

which were not honored by the Bank.

he was prejudiced in that "if not for counsel's failure to investigate and inform [Movant] that he had a defense to the element of intent to defraud, he would not have pled guilty but would have insisted on a trial."

■■■ "Appellate review of the denial of a Rule 24.035 motion for [postconviction] relief is limited to a determination of whether the motion court's findings of fact and conclusions of law are clearly erroneous." *Boyd v. State,* 205 S.W.3d 334, 338 (Mo.App.2006); *see* Rule 24.035(k). "Findings and conclusions are clearly erroneous only if, after a review of the entire record, we are left with the 'definite and firm impression that a mistake has been made.'" *Morehead v. State,* 145 S.W.3d 922, 927 (Mo.App.2004) (quoting *Rice v. State,* 988 S.W.2d 556, 558 (Mo.App.1999)). We presume that the motion court's findings and conclusions are correct. *Butts v. State,* 85 S.W.3d 132, 134 (Mo.App.2002). Movant bears the burden of proving the grounds asserted for postconviction relief by a preponderance of the evidence. *Morehead,* 145 S.W.3d at 927; *Huth v. State,* 976 S.W.2d 514, 516 (Mo.App.1998).

■■■ "To prevail on a claim of ineffective assistance of counsel where a movant has entered a plea of guilty, a 'movant must show his counsel's representation fell below an objective standard of reasonableness and that, as a result, he was prejudiced.'" *Boyd,* 205 S.W.3d at 338 (quoting *Cupp v. State,* 935 S.W.2d 367, 368 (Mo.App.1996)); *see Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). "Movant must show, but for the conduct of his trial attorney about which he complains, he would not have pleaded guilty but would have insisted on going to trial." *Cupp,* 935 S.W.2d at 368. Where, as here, there is a negotiated plea of guilty, a claim of "ineffective assistance of counsel is immaterial except to the extent it impinges upon the voluntariness and knowledge with which the plea of guilty was made." *Id.* "A guilty plea cannot be voluntary if it is the result of fraud, mistake, misapprehension, fear, persuasion 'or the holding out of hopes which prove to be false or ill founded.'" *Fisher v. State,* 192 S.W.3d 551, 554 (Mo.App.2006) (quoting *Drew v. State,* 436 S.W.2d 727, 729 (Mo.1969)); *see Chaney v. State,* 223 S.W.3d 200, 207 (Mo.App.2007).

■■■ As a general rule, complaints a defendant might have about his trial counsel's failure to investigate his case are waived by a plea of guilty. *Simmons v. State,* 100 S.W.3d 143, 146 (Mo.App.2003).

> In order to succeed on a claim of ineffective assistance of counsel based on inadequate preparation or investigation, Movant was required to allege what information plea counsel failed to discover; that a reasonable investigation or preparation would have resulted in the discovery of such information; and that the information would have aided or improved his defense.

*McVay v. State,* 12 S.W.3d 370, 373 (Mo. App.2000); *Voyles v. State,* 272 S.W.3d 921, 923–24 (Mo.App.2009). "When counsel is charged with failing to conduct an adequate investigation we look to whether [he] fulfilled [his] obligation to either conduct a reasonable investigation or to make a reasonable decision that a particular investigation was unnecessary." *Fisher,* 192 S.W.3d at 555. " '[T]he duty to investigate does not force defense lawyers to scour the globe on the off-chance something will turn up; reasonably diligent counsel may draw a line when they have good reason to think further investigation would be a waste.'" *Strong v. State,* 263 S.W.3d 636, 652 (Mo. banc 2008) (quoting *Rompilla v. Beard,* 545 U.S. 374, 383, 125 S.Ct. 2456, 162 L.Ed.2d 360 (2005)).

■ Movant argues that the type of investigation made by Mr. Carter was not enough because it merely relied on "the State's version of events." He maintains Mr. Carter failed to investigate whether the Bank notified him that his account was closed thereby negating the intent to defraud element of the charge. He also asserts Mr. Carter should have undertaken his own "independent investigation" presumably by filing formal discovery requests or taking depositions.

Mr. Carter related he had reviewed the State's file in this matter including the summary of the testimony offered at the preliminary hearing in which the president of the Bank testified he notified Movant his account had been closed. In this connection, Movant presented no evidence at the evidentiary hearing indicating the State's summary of the Bank president's testimony at the preliminary hearing was false or otherwise misleading. As previously related Movant bore the burden of proving the grounds asserted for postconviction relief by a preponderance of the evidence. *Morehead*, 145 S.W.3d at 927; *Huth*, 976 S.W.2d at 516.

Further, Mr. Carter was not ineffective when he relied on the information supplied by the State. The State, as well as other attorneys, are ethically bound by Rule 4–3.4 and it is clear that, generally, there is no error in relying on information provided to a defense attorney by the State.[5] *See State v. Stewart*, 850 S.W.2d 916, 921–22 (Mo.App.1993) (holding that based on the fact "that the [State] would have a duty to disclose the truth regarding facts relevant to the case ..." "it was not unreasonable for [the defense attorney] to rely on such information ..."). Accordingly, we cannot say the motion court erred when it determined Movant was not prejudiced because Mr. Carter had not filed a third request for discovery.

■ "In considering Rule 24.035 claims of ineffective assistance of counsel, courts must 'view the reasonableness of counsel's conduct from counsel's perspective at the time and eliminate hindsight from consideration.'" *Moore v. State*, 39 S.W.3d 888, 893 (Mo.App.2001) (quoting *Henderson v. State*, 977 S.W.2d 508, 511 (Mo.App.1998)). "A defense counsel need not be clairvoyant to be effective and is only required to do what is reasonable under the circumstances." *Id.* Here, Movant has not demonstrated that Mr. Carter's purported failure to further investi-

---

5. Rule 4–3.4 provides:
A lawyer shall not:
(a) unlawfully obstruct another party's access to evidence or unlawfully alter, destroy, or conceal a document or other material having potential evidentiary value. A lawyer shall not counsel or assist another person to do any such act;
(b) falsify evidence, counsel or assist a witness to testify falsely, or offer an inducement to a witness that is prohibited by law;
(c) knowingly disobey an obligation under the rules of a tribunal, except for an open refusal based on an assertion that no valid obligation exists;
(d) in pretrial procedure, make a frivolous discovery request or fail to make reasonably diligent effort to comply with a legally proper discovery request by an opposing party;

(e) in trial, allude to any matter that the lawyer does not reasonably believe is relevant or that will not be supported by admissible evidence, assert personal knowledge of facts in issue except when testifying as a witness, or state a personal opinion as to the justness of a cause, the credibility of a witness, the culpability of a civil litigant, or the guilt or innocence of an accused; or
(f) request a person other than a client to refrain from voluntarily giving relevant information to another party unless:
(1) the person is a relative or an employee or other agent of a client; and
(2) the lawyer reasonably believes that the person's interests will not be adversely affected by refraining from giving such information.

gate whether Movant received notice from the Bank regarding his closed account affected his decision to plead guilty to the crime charged. *See Cupp,* 935 S.W.2d at 368. Indeed, Movant testified he was predominantly induced to plead guilty based on the possibility that he was going to be charged with writing between six and ten additional bad checks. We defer to the findings and conclusions of law of the motion court. *Butts,* 85 S.W.3d at 134. We also defer to the credibility determinations of the motion court. *Watts v. State,* 248 S.W.3d 725, 732 (Mo.App.2008). Movant has failed to meet his burden of proving he received ineffective assistance of plea counsel. Point denied.

We affirm the denial of Movant's post-conviction motion.

BATES, P.J., and BURRELL, J., concur.